## THORNTON-CLANEY LUMBER CO. v. J. M. O'QUIN & SONS.

[76 South. 732, Division B.]

1. INJUNCTION. *Wrongful injunction. Damages. Attorney fees.*

    In an action for damages for the wrongful suing out of an injunction preventing defendant's delivery of lumber, which it had sold to others, the measure of damages, as to attorney fees, where the bill was demurred to is the reasonable amount of attorney fees for the hearing of the demurrer to the bill in the court below and in the supreme court on appeal, but no allowance should be made for services in a suit which arose subsequent to the dissolution of the injunction.

2. SAME.

    In such case the damages after allowing attorney fees, would be the difference in the value of the lumber at the time of the suing out of the injunction and its value at the period of dissolution, with interest on the difference from the date of the suing out of the injunction.

APPEAL from the chancery court of Pike county.

HON. R. W. CUTRER, Chancellor.

Bill for accounting and for an injunction by Thornton-Claney Lumber Company against J. M. O'Quin & Sons. Injunction issued, demurrer to bill sustained, and decree affirmed on appeal, and defendant thereafter filed a suggestion of damages for the wrongful suing out of the injunction, and from a decree awarding damages, the Thornton-Claney Lumber Company appeals.

The facts are fully stated in the opinion of the court.

*Jones & Tyler,* for appellant.

The second assignment of error is directed to the award of three hundred dollars attorneys' fee. The suggestion of damages filed was for five hundred dollars "all attorney's fees in the original suit in chancery court and supreme court and all litigation in this suit."

We submit, first, that no attorney's fees should have been allowed to the appellees because the record shows beyond  dispute that there was no service rendered in the matter of the dissolution of the injunction.  There was no application to dissolve, nor any step taken in that behalf.  Counsel appeared for the appellees five months after the writ was issued and made a defense to the merits of the bill.  Two months later that defense was considered by the court, held to be good and the suit dismissed.  The dismissal of the bill, of course, dissolved the injunction.  On appeal to this court the case was considered on its merits, and nothing was done save what was necessary to defeat the main suit filed by appellant.

Neither can it be said that the bill as filed was solely one for an injunction.  The injunctive relief was ancillary or auxiliary to the main relief prayed for in the bill. The prayer for injunction could have been stricken from the bill and there remained to be determined the damages sustained by appellant by the refusal of appellees to comply with their contract of sale of lumber, on an accounting of the various sizes and grades of lumber involved.  On motion to dissolve, the court might have properly dissolved the writ and remitted complainants to the loss sustained on an accounting in the event the defendant persisted in disposing of the lumber sold.

It is a familiar rule of law that while attorney's fees are an element of damages on an injunction bond, they are confined to services employed in and about the dissolution of the injunction.  This subject is exhaustively treated in a note to *Littleton* v. *Burgess* (Wyo.), 16 L. R. A. (N. S.), page 49; at page 64, title V, the author of the note says: "The writ of injunction is a collateral process, which may or may not be resorted to; and therefore, liability for counsel fees upon the bond given to procure it is limited to such as are paid or incurred in procuring its dissolution."

In support of the foregoing text, cases are cited from the supreme courts of Alabama, California, Colorada, Illinois, Iowa, Kentucky, Louisiana, Missouri, Nebraska, Ohio, and South Carolina. To support the rule the author cites as authority the states of Alabama, Arkansas, California, Colorado, Illinois, Iowa, Kentucky, Louisiana, Maine, Maryland, Minnesota, Missouri, Montana, Nebraska, New York, North Carolina, Ohio, Oregon, South Carolina, Texas, Vermont, and Washington. *Jamison* v. *Dulaney*, 74 Miss. 890, and *Curphy* v. *Terrell*, 89 Miss. 642; *Thomas* v. *McDaneld*, 77 Iowa, 302; *Littleton* v. *Burgess*, 16, L. R. A. (N. S.), at page 71, par. B, to title VIII.

In this connection it is well to observe that our court cites and follows the supreme court of Alabama in both the *Jamison* and *Curphy* cases, *supra*, and specially mentions the distinction drawn by that court, in *Curry* v. *American Freehold Land Mortgage Co.* (Ala.), 27 So. 454; *Millspaugh* v. *Jackson*, 14 So. 44; and *Bolling* v. *Tate*, 65 Ala. 417.

If, therefore, appellant is liable to appellee at all, the extent of the decree should be the difference between, Item 5, $243.90, Item 6, $130.83, $374.73, and the difference in value of the lumber as above, $342.00 is $32.73 Net Loss to appellee.

*L. H. McGehee,* for appellee.

The first cross assignment of error brings into review the action of the court in allowing appellee damages at the rate of seven dollars and fifteen cents per one thousand feet on forty-three thousand one hundred sixty-nine feet of lumber.

The testimony for the defendants, appellees, which the court finds to be true, shows that appellees contracted to sell No. 1 grade of lumber to the Thornton-Claney Lumber Company at eleven dollars per one thousand feet, and that about seventy-five per cent. of the lumber was the No. 1 grade, and contracted to sell the No. 2 grade or

about twenty-five per cent. of the lumber at nine dollars per one thousand feet, or an average price excess of ten dollars per one thousand feet. That only a few days later the defendants sold the entire lot of lumber, after finding out the fraud that had been perpetrated upon them, at an average price of ten dollars and fifty cents per one thousand feet. The record also shows that between the 12th day of June, 1912, the time the injunction was sued out, and the 21st day of June, 1915, the date the injunction was finally dissolved, No.1 grade, common and better, increased five dollars per one thousand feet in price, and that the average increase in price on all grades during this time was from three to four dollars per one thousand feet.

Now it will be remembered that the appellees were enjoined from selling this lumber at this price; therefore, by reason of the injunction, the appellees were denied the right and prevented from obtaining, even on the least calculation of three dollars per one thousand feet, the sum of thirteen dollars and fifty cents per one thousand feet, for all the lumber that they had on hand, to wit: two hundred and fifty thousand feet.

This brings us to a consideration of the errors alleged by the appellant on the direct appeal. It is first said that appellees are entitled to no damages at all by way of attorney's fees, because of the services rendered in this case by the attorneys was not in and about the dissolution of the injunction, and as the injunction was mere ancillary to the principal object of the bill of complaint, that no fees at all can be allowed.

Under this phase of the case, the bill falls squarely within the rule announced by this court in *Jamison* v. *Dulaney*, 74 Miss. 890; *Curphy* v. *Terrill*, 89 Miss. 624, and it may be remarked in passing that "the dismissal of the bill on the final hearing or on demurrer amounts to a final disposition of the cause, adverse to the plaintiff

and entitles defendant to bring an action on the bond.'' 10 Enc. Pl. & Pr. 1123.

Counsel insist, however, that even if appellees are entitled to damages by way of attorneys' fees, the allowance is excessive, and that the decree of the court really included attorneys' for services rendered in and about defending the suit on the merits. This is a total misconception of appellees' claim in this connection. Appellees claim is predicated upon the universally recognized rule that they are entitled to all damages resulting, proximately from the wrongful suing out of the injunction. This damage necessarily includes all expenses necessarily incurred by the appellees in and about procuring the dissolution of the injunction, and obtaining compensation for its wrongful issuance.

The real gist of appellees argument is that even if you are entitled to damages for legal expenses necessarily incurred in getting the injunction dissolved, you are not entitled to any compensation for counsel necessarily employed in getting these damages assessed. Our contention is directly opposite.

This case does not present a case where the appellees are seeking to recover attorney's fees for defending the merits of the case. If the injunction was mere ancillary to the case and if the injunction had been dissolved, the case had to be fought out on its merits on some other proposition and the attorneys' fees in connection with the merits could not be said to be approximately caused by the wrongful issuance of the injunction, but where as here, the damages claimed and allowed are irrevocably connected with and grew out of the wrongful issuance of the injunction, there is no principle of law, equity or morals, which will deny appellees right to recover such damages.

Generally we want to say that upon this record, appellant has no cause at all to complain and should congratulate itself that it escaped in the lower court as easily as it did.

Ethridge, J., delivered the opinion of the court.

J. M. O'Quin & Sons, appellees, were lumber manufacturers and dealers, and the Thornton-Claney Lumber Company was a corporation doing business at Chicago, Ill., and engaged in the buying and selling of lumber. The agent of the Thornton-Claney Company went to the appellees to buy about two hundred fifty, thousand feet of lumber then on the yard of appellees. An order was written out and signed by the agent of appellant and the appellees, but the order was signed immediately before the arrival of a train, and the appellees claimed not to have read the order, but signed it hastily so the agent of appellant could catch the train. They claim that when the copy of the order was returned to them, about a week after the signing, that it did not contain the agreement as actually agreed upon, and they refused to ship the lumber. The appellant claims to have bought the lumber at nine dollars per thousand, and testified that the order was written as agreed, and was returned the following day. The appellees refusing to deliver the lumber, appellant filed a bill in the chancery court alleging the contract, and making the order signed by O'Quin & Sons an exhibit thereto, alleged the buying of the lumber, and that because of the peculiar facts, and of the various grades of lumber included in the order, there should be an accounting, and prayed for an injunction against the sale of the lumber by appellee, and an injunction writ was issued. A demurrer was filed to the bill and sustained by the court, from which an appeal was taken to this court, and the decree affirmed here. There was no motion to dissolve the injunction.

After the decree was affirmed here, appellees, O'Quin & Sons, filed a suggestion of damages in the chancery court, but the appellant refused to appear for some

time thereafter, on the theory that the chancery court had no jurisdiction of the cause, but finally an agreement was entered into in which it was provided that the Thornton-Claney Company could propound their claim for damages for breach of the contract, and the defendants, O'Quin & Sons, could file their claim for damages for the wrongful suing out of the injunction. Thereupon the chancery court took jurisdiction of the cause, and, after hearing evidence, held that the order signed by O'Quin & Sons was of no effect and void, and then awarded damages for the suing out of the injunction, in which it allowed three hundred dollars, as attorney's fee; ninety-four dollars, for extra expense of moving forty-seven thousand, four hundred and twenty-two feet of lumber, at two dollars per thousand; seven dollars and fifty cents per thousand for forty-three thousand, one hundred and sixty-nine feet of lumber on which there was a total loss; and eight dollars and sixty-five cents per thousand for seventeen thousand, one hundred and two feet, total loss—making a total of nine hundred and fifty-one dollars. From this decree the Thornton-Claney Company appeals here.

On the trial the evidence as to attorney's fees showed that one hundred dollars was a reasonable fee for the original hearing on the demurrer in the court below; and that seventy-five dollars was a reasonable fee for prosecuting the appeal here. The court also allowed one hundred dollars for feeding oxen for a reasonable time after suing out the injunction, and also allowed one hundred and twenty-five dollars attorney's fee in the present suit.

It seems there were approximately two hundred and fifty thousand feet of lumber on hand at the time the injunction was sued out, and that two hundred and twenty-five thousand feet of this lumber was contracted to be sold to another party by appellee, at ten dollars and fifty cents per thou-

sand, but because of the suing out of the injunction, delivery was not made. The injunction was sued out in 1912, and in 1913 the lumber advanced about five dollars per thousand over the price in 1912. After the appeal was taken to the supreme court, there was an effort made by appellant here to have O'Quin & Sons agree to a sale of the lumber as it then stood, at the market price, and have the litigation continue so as to settle the rights of the parties as to who was entitled to the proceeds of the lumber. This O'Quin & Sons refused to do. The suit was finally affirmed in the supreme court in 1915. It appears that a considerable amount of lumber on the yard was sold in 1915 and 1916 after the affirmance in the supreme court, and that some of the lumber on the yard could be worked over at an expense of one dollar and fifty cents per thousand, and then marketed at an advance of about five dollars over the price in 1912. The appellant claims the court, in assessing the damages, refused to allow the increased value of the lumber caused by the advance of the market, while charging the appellants with the damage to the lumber on the yard and for the value of the lumber that was no good, or a total loss, and that this value, if allowed, would reduce the judgment to the extent of three hundred and forty-two dollars. The chancellor, in his decree, does not enter into a specific finding of fact, but it does not appear that he made allowance for the increased value of the lumber. It rather appears, on the contrary, that he failed to make allowance for this increase in the value of the lumber that was sold.

We think the measure of damages in this case would be the amount of attorney's fees expended in the first suit, the amount appearing to be one hundred and seventy-five dollars, but no allowance should be made for services in the present suit, as it has

arisen subsequent to the dissolution of the injunction, and then the damage, after allowing attorney's fees, would be the difference in the value of the lumber at the time of the suing out of the injunction and its value at the period of dissolution, with interest on the difference from the date of the suing out of the injunction. This rule is announced in *Rubon* v. *Stephan,* 25 Miss. 253.

The judgment is therefore reversed, and the cause remanded.

*Reversed and remanded.*