KENDRICK *et al. v.* ROBERTSON *et ux.**

(Division A.    Jan. 24, 1927.)

[111 So. 99.    No. 25759.]

1. INJUNCTION.  *Finding, in buyer's suit to enjoin ouster proceedings, that seller did not agree to procure lease on which buyer relied held sustained.*

   In suit by buyer of meat market and grocery business to enjoin proceedings to oust him from premises brought by seller after securing lease running to himself, evidence *held* to support chancellor's finding that seller, at time of sale, did not orally agree to procure a long term lease of premises for buyer and that buyer did not go into possession in reliance on such agreement.

2. LANDLORD AND TENANT.  *Vendee of personal property under bill of sale, not referring to good will, does not have paramount right of renewal of lease.*

   Under bill of sale conveying personal property, but making no reference whatever to good will or lease of premises wherein it was situated, vendee does not have any paramount right of renewal of lease on building under theory of tenant's right of renewal.

3. EVIDENCE. *Unambiguous written contract or conveyance complete in all its essential terms, controls.*

    In measuring rights of parties to written contract or conveyance, which on its face is unambiguous and expresses an agreement complete in all its essential terms, the writing will control.

4. INJUNCTION. *Attorney's fees held improperly allowed on dissolution of injunction, which was mere incident to relief prayed for*

    Allowance of attorney's fees on dissolution of injunction *held* erroneous, where injunction was mere incident to relief prayed for, and, although hearing was in vacation on motion to dissolve injunction, the court adjudicated all rights of parties without objection.

---

*Corpus Juris-Cyc. References: Evidence, 22CJ, p. 1075, n. 50; p. 1098, n. 96; p. 1295, n. 95; Injunctions, 32CJ, p. 350, n. 77; p. 476, n. 9; Landlord and Tenant, 35CJ, p. 1014, n. 75 New.

APPEAL from chancery court of Marion county.

HON. T. P. DALE, Chancellor.

Suit by E. W. Kendrick and another against R. M. Robertson and wife. Decree for defendants, and complainants appeal. Affirmed in part, and in part reversed.

*Davis & Conner* and *R. D. Ford,* for appellants.

I.  After there had passed from the appellees to appellant the right to the leasehold which the appellees had in this building and the good will of the stand, along with the fixtures and stock of goods in the building, is equity so powerless that it cannot intervene to prevent the appellees from filching away from the appellant Kendrick the very identical thing which he bought and paid for. Appellee Robertson himself opened up negotiations for the sale of this business; the appellant Kendrick and his co-partner, Pearson, paid for this business the last cent exacted by the appellee Robertson, and on the very terms exacted by him. The appellant Kendrick and his co-partner were placed in possession of this very business by the appellee Robertson, the deferred install-

ments on the purchase price of this building and the rentals were promptly paid. Now, will equity permit the appellees to take advantage of the knowledge that they had acquired of the value of this business and their relation to the appellant Kendrick to deprive him of his "tenant's right of renewal?"

What is this "tenant's right of renewal?" It is a valuable right even though it is only a chance of obtaining a renewal of a lease to leasehold property. *Fine* v. *Lawless,* 201 S. W. 160, L. R. A. (N. S.) 1918C 1045; 16 R. C. L., page 904; *McCourt* v. *Singers-Bogger,* 76 C. C. A. 73, 145 Fed. 103, 7 Ann. Cas. 287; *Crook* v. *Crook,* 20 Abb. N. C. 249; *Phyfe* v. *Wardell,* 28 Am. Dec. 435; *Spiess* v. *Rosswog,* 63 How. Pr. 401, affirmed in 96 N. Y. 651.

It is too plain for argument that this thing which the appellee Robertson says that the appellant got was nothing more or less than a well-organized business at a well-known and well-located stand that had been frequented by customers for a long number of years, and was nothing more or less than good will.

"Good will" was defined by Lord ELDON in *Crutwell* v. *Lye,* 17 Vest. Jr. 335, 34 Eng. Reprint 129, simply to be "the possibility that the old customers will resort to the old places;" but in *Churton* v. *Douglas,* Johns V. C. 174, 70 Eng. Reprint 385, it was said that this was too narrow a view to take of it, that "It was every positive advantage acquired, arising out of the business of the old firm whether connected with the premises where it was carried on, with the name of the late firm or with any other matter carrying with it the benefit of the business of the old firm." See, also, *Sanford-Day Iron Works* v. *Enterprise Foundry & Machinery Co.,* 138 Tenn. 437, 198 S. W. 258. The general rule is laid down in R. C. L. 995. The universal rule as announced in all of the decided cases is that a sub-lessee having acquired the good will of a business cannot be ousted by the lessee on the lessee's procuring a renewal lease. If such les-

see procures a renewal lease, he will be held to be a trustee and to hold such renewal in trust for the sublessee. See *Bennett* v. *Vansyckel,* 4 Duer 462.

II.    The bill of complaint raises the question of the tenant's right of renewal running in favor of appellant Kendrick.    The chancellor's decision in this case necessarily denied this contention as a matter of law.    The bill also sought relief on the ground that there was a trust impressed on this renewal release by reason of the fact that the appellees had been unfaithful to their relation to the appellant Kendrick in that they had secretly violated their obligation to appellant Kendrick to procure a renewal lease for a definite length of time and take the same in the name of appellant Kendrick and his co-partner, R. H. Pearson.    The trial court erroneously decided this proposition adversely to appellant on the facts.

III.    Another of appellants' assignments of error questions the court's findings as a matter of law, that the giving by J. Frank Brown of a notice to the appellant, Kendrick, R. H. Pearson and the appellees R. M. Robertson and Mrs. Bessie Robertson to vacate had the effect of terminating the rights of appellant Kendrick in a litigation as between the appellant Kendrick and the appellees the Robertsons.    This notice given by the landlord, Brown, was not followed by any ouster proceedings begun by him.

This notice was not given in good faith, but was really a sham and a pretense as the result of instigation of the appellees and through collusion between them and the landlord Brown.    The law in a case of this kind is set out in *Fine* v. *Lawless, supra,* where the court expressly held adversely to the contention of the appellees.

IV.    Attorney's fees were erroneously awarded as damages at the conclusion of the hearing of this case on its merits on bill, answer and evidence.    This was clearly wrong as was recently ruled in *Staple Cotton Co-op.*

*Ass'n* v. *Buckley,* 106 So. 747, following a long line of decisions beginning with *Mims* v. *Swindle* 124 Miss. 687; *Howell* v. *McLeod,* 127 Miss. 1; *Giglio* v. *Saia* (Miss.), 106 So. 513; and *Hunter* v. *Hankinson,* (Miss.), 106 So. 514.

This case should be reversed.

*Rawls & Hathorn* and *Hall & Hall,* for appellees.

I.   Practically the entire brief for appellants is based on the false assumption by him that he purchased or that there was conveyed to him or intended to be conveyed to him the good will of this business. Under a familiar rule of law that written documents speak for themselves, we think this inquiry should begin by an examination of the terms of the bill of sale or written instrument made, executed and delivered by R. M. Robertson to appellant Kendrick on September 18, 1924. Whatever right Kendrick may have acquired and now has in said property is founded on this written instrument. There is no provision in said instrument transferring the *good will* or established trade of the said R. M. Robertson, or the City Market, nor any reference whatsoever to the occupancy of said building.

We have no quarrel with the decisions referred to by appellant, beginning with *Holt* v. *Holt,* 1 Ch. Cas. 190, but we submit that in each and every one of this line of cases some element or circumstance entered creating more of a fiduciary relation between the parties than exist by virtue of the bill of sale from Robertson to Kendrick in the case at bar. In support of this statement we cite 16 R. C. L., page 905, discussing Renewals by Fiduciaries for Own Benefit Generally. A careful reading of the case of *Fine* v. *Lawless,* will convince the court that it also has no application to the case at bar.

II.   Appellant quarrels with the trial court for finding from the testimony that Kendrick & Pearson did not

go into the building in question relying upon an agreement with the appellees to procure for them a long term lease on said building. Appellants say that the chancellor's findings were contrary to the great weight of evidence. It is our understanding of the rule that this adjudication of a fact from conflicting testimony by the chancellor will not be disturbed unless it is so manifestly wrong as to work injustice or to shock the conscience of this court. We submit that the record abundantly supports the chancellor.

III. The third assignment of error goes to that portion of the chancellor's findings, wherein it was held that the tenancy of Kendrick & Pearson was terminated by the written notice from J. Frank Brown, the owner of the property, in September, 1924, and that on and after the expiration of thirty days after said time, said Kendrick & Pearson had no further rights to the possession or occupancy of said building, except as tenants at sufferance or at will. They proceed to set up a straw man, not reflected in the record, and then demolish it for their own amusement and gratification.

IV. Appellants say that the chancellor erred in allowing attorney's fees as damages upon the dissolution of the injunction. This decree was entered upon a hearing had in vacation and the disposition made of the case was not final unless the appellants chose to let it be so. It was only a hearing upon a motion to dissolve the injunction and the decree was drawn in strict accordance with the provisions of section 381, Hemingway's Code (section 621, Code of 1906).

It is at once apparent that the decree appealed from was not a final decree and could not become final until after the following term of chancery court. The appellants were entitled to a hearing upon the merits of the case at the next regular term if they desired it. The cases cited by opposing counsel make it perfectly clear that the allowance of attorney's fees in an injunction

suit is improper only when awarded upon a *final hearing*. Consequently, the chancellor was correct in allowing attorney's fees.

V.   The decree of the chancellor should be affirmed because the bill of complaint and the entire proof submitted by appellants are an effort to establish a trust in land by virtue of an oral contract, no part of which is in writing, and appellants' case falls, therefore, squarely within the statute of frauds. Section 3124, Hemingway's Code (section 4780, Code of 1906), *Miazza* v. *Yerger*, 53 Miss. 135, is strikingly in point.   See, too, *Clearman* v. *Cotton*, 66 Miss. 467; and *Campbell* v. *Bright*, 87 Miss. 443.

Argued orally by *T. B. Davis* for appellants.

COOK, J., delivered the opinion of the court.

This case involves the right to the occupancy of a certain building under the terms of a renewal lease thereon, executed by the owners of the building to appellees on April 1, 1925.   On and prior to the 18th day of September, 1924, appellees were occupying the building in question, which is located on the east side of Main street in the city of Columbia, Miss., under a written lease executed by the owner of the building in favor of appellees, dated March 29, 1923, which lease contract provided for a month to month tenancy for an indefinite period of time, terminable at the will of either party on one month's notice, and the appellees were carrying on in this building a meat market and grocery business, under the name of "City Market."   The business was conducted in the name of R. M. Robertson, but there is testimony tending to show that the appellees were partners in business.   For some time prior to September 18, 1924, the appellant E. W. Kendrick was an employee of R. M. Robertson, and on said last-named date, while appellee Mrs. Bessie Robert-

son was away from home, appellee R. M. Robertson sold the entire stock of goods, fixtures, and equipments to appellant E. W. Kendrick and one R. H. Pearson, for a consideration of three thousand dollars of which one thousand dollars was paid in cash and the balance evidenced by thirteen promissory notes maturing monthly. As evidence of the sale, appellee R. M. Robertson executed to the purchasers a bill of sale, reading, in part, as follows:

"I, the undersigned, do hereby sell, convey, deliver, and warrant unto R. H. Pearson and E. W. Kendrick, the following personal property, to-wit: two ice boxes; one pair of counter scales; one electric motor with any and all fixtures; one meat cutter; two cash registers; one oil tank; one pr. of Fairbanks platform scales; one pr. swinging scales, and any and all knives, pins, hooks, and saws, and, in fact, any and everything used in the meat market of the undersigned, situated on Main street of Columbia, Miss., also any and all groceries, canned goods, three showcases, and any and all other fixtures used in and about the grocery department, which is also situated in the same building as the meat market."

Immediately upon the consummation of this trade, appellant Kendrick and his partner went into possession of the building and stock of goods and fixtures therein, and thereafter they paid the monthly rental of fifty-seven dollars and fifty cents provided for in the lease contract from the owner of the building to the appellees, paying same to the appellees, who in turn paid it to the owner.

On September 26, 1924, the landlord gave notice to appellees to vacate said building and terminate their tenancy and occupancy thereof, in which notice was the following recital:

"I have heard that there has been some attempted transfer of a portion of this lease to Kendrick and Pearson by R. M. Robertson, and accordingly a copy of this thirty days' written notice to vacate and terminate said tenancy is addressed to said party."

A copy of this notice to terminate the tenancy was served upon the appellant Kendrick and his partner, but no further steps were thereafter taken to terminate the tenancy or oust the tenants.

On the 1st day of April, 1925, the appellees procured a lease to said building from the owner for a period of one year from that date, with the privilege of renewal for a twelve months' term, at a monthly rental of seventy-five dollars per month, and there is a recital in this lease contract that the building was then being occupied by Kendrick and Pearson as a grocery store and meat market under a lease from R. M. and Bessie Robertson. After this lease was executed, no immediate effort was made to dispossess appellant Kendrick, but he continued to pay the fixed rent of seventy-five dollars as usual, until the 15th day of July, 1925, when the appellees served him with notice to vacate the premises on or before the 1st day of August, 1925. In the meantime, appellant Kendrick had acquired the interest of his partner and had become sole owner of the business, and, upon receiving this notice to vacate the premises, he refused to do so.

Thereupon the appellees instituted in a justice of the peace court proceedings seeking to oust him from possession of the premises. This case was heard before the justice of the peace, and judgment rendered for appellees, and an appeal was taken therefrom to the circuit court, where a motion was made to transfer the case to the chancery court on the ground that there were equitable defenses which could not be availed of in the circuit court. This motion was overruled, and thereupon Kendrick and his sublessee, Neomi Padgett, filed their bill in the chancery court seeking to enjoin further prosecution of the suit in the circuit court, alleging, among other things, that, contemporaneously with the sale of the property to appellant Kendrick, appellees entered into a separate, oral contract to act as agent in securing for Kendrick and his partner the occupancy of said building, and securing for them a long term lease on said building, and

145 Miss.—38.

taking said lease in the name of Kendrick and his part-
ner or their assigns; that, relying upon the good faith of
appellee in this regard, appellants had expended large
sums of money which they would not have expended
otherwise; that, thereafter, appellees designedly sought
to repudiate the contract and evict appellants and re-
possess said building, and, with this in view, disregard
their fiduciary relation to appellant Kendrick, as evi-
denced by the procuring of the lease to said building in
their names; and the bill charged that appellees, in pro-
curing the lease in their own names, acted in violation
of their obligation to appellees; that, as a matter of
equity, they held said lease as trustees, by reason of a
trust arising *ex maleficio;* and that they should be com-
pelled to assign the same to Kendrick, or be decreed to
hold the same for his benefit. This bill was amended so
as to charge that appellees represented to appellant Ken-
drick that they had a written lease, signed by the owner of
the building, covering the premises in question, running
for an indefinite length of time, and providing for a
month to month tenancy, and that, as a part of the general
transaction of sale of said stock of goods and fixtures in
said building, and as an inducement for appellants to
purchase said goods, appellees offered to let appellant
Kendrick into possession of said building and keep him
in possesson thereof, under the lease contract held by ap-
pellees, so long as appellees could lease the building;
that the appellees also represented that they were the
only persons who could lease the building, and they
agreed, as part of the transfer and as an inducement
for entering into said contract, to obligate themselves to
procure, in behalf of said appellant, a long time lease,
taking such lease in the name of the appellant Kendrick;
that this proposition was accepted and the trade consum-
mated on this basis; and that appellant Kendrick and his
partner went into possession of said building, paying
rent thereon to appellees from month to month, relying
upon this agreement had with them, and consequently

made no effort themselves to procure a lease from the owner of the building.

The bill prayed for an injunction restraining further prosecution of the circuit court suit and for a final decree adjudging that the long time lease acquired by appellees should be assigned unto Kendrick, or, in lieu thereof, the court should decree that appellees held the lease as trustees for the benefit of Kendrick.

The temporary injunction was granted, and thereafter the case came on for hearing before the chancellor in vacation on the amended bill of complaint, answer, motion to dissolve, and oral and record evidence, and the chancellor held that the appellants had no right or equity in the possession of the premises in question, dissolved the injunction, and awarded attorney's fees as damages, and from this decree this appeal was prosecuted.

The bill of complaint sought relief on the ground, among others, that there was a trust impressed on the renewal lease taken by the appellees, by reason of the fact that they had been unfaithful to their relation to the appellant Kendrick, in that they had secretly violated their obligation to procure for him a renewal lease for a definite length of time and take the same in the name of the said Kendrick and his copartner, R. H. Pearson. The appellant Kendrick testified that, as an inducement to the consummation of the trade, the appellee R. M. Robertson agreed to secure such a lease and to take it in the name of Kendrick and Pearson, and to protect them in the possession of the building and premises. The appellee R. M. Robertson emphatically denied that any such agreement was made or that such a lease was discussed or mentioned during the negotiations for the sale, and in his decree, the Chancellor expressly found that the appellees did not agree and bind themselves to procure, in behalf of Kendrick and Pearson, a long term lease upon the premises; and that the said Kendrick and Pearson did not go into the possession of the building relying upon such an alleged agreement with the appellees. We are

asked to reverse this finding of fact by the chancellor, but, upon the proof in the record, we do not think his finding of fact upon this point can be reversed. There is ample evidence in the record to support this finding, and we are unable to say that it is manifestly wrong.

Another contention of the appellants, and the one on which they principally rely to sustain their bill of complaint, is that by their purchase the appellants acquired the leasehold right which the appellees had in the building, as well as the good will of the business, and consequently, there arose in their favor, as assignee of the lease, what is known as the "tenant's right of renewal," which beneficial interest equity will protect as against the assignor of the lease.

We have been cited to and have found no case in this state which has recognized or applied the doctrine of "tenant's right of renewal," but this doctrine is recognized in the decisions of numerous other courts, as illustrated by the well-considered case of *Fine* v. *Lawless,* 139 Tenn. 160, 201 S. W. 160, L. R. A. 1918C, 1045, and authorities there cited and analyzed, and, conceding the equity of the rule, and that it would be applied by this court in a proper case, we do not think it is applicable to the facts in the case at bar. The basis of this doctrine, as recognized by other courts, is the existence of fiduciary or *quasi* fiduciary relations between the parties. In 16 R. C. L. 905, in discussing renewals by fiduciaries for their own benefit, generally, it is said:

"In order, however, that the doctrine may apply, there must exist some fiduciary relation between the person taking the new lease and the person claiming the benefit thereof; where the elements of fiduciary relationship and concealment or bad faith are lacking, the rule has no application."

On page 1052 of L. R. A. 1918C, the author of the note appended to the case of *Fine* v. *Lawless, supra,* after reviewing the authorities bearing upon this rule or doctrine, says:

"But no case has been found in which the lessee's assignee has been protected in his tenant right to renew as against the lessee who has secured the renewal for himself, unless some other element or circumstance entered creating more of a fiduciary relation between the parties than exists by virtue of the assignment. Thus in *Fine* v. *Lawless, ante* [L. R. A. 1918C] 1045, the assignee was also the vendee of the assignor's business carried on in the premises, together with its good will. Whether the right would have been protected in the absence of this added element is at least problematical."

In the case at bar, the bill of sale evidencing the consummation of the trade between the parties conveys and particularly describes certain personal property, but it does not convey or make any reference whatever to the lease of the premises, or the good will of the business. This written conveyance was prepared under the supervision of the appellee or his partner, and was signed and acknowledged by the appellee R. M. Robertson, and delivered to the appellant Kendrick and by him filed for record among the public records of the county, and by this conveyance. the rights of the appellants must be measured. Whatever right the appellant Kendrick acquired and now has in this building is founded on this written conveyance, and since it does not convey either the lease or the good will of the business, it does not come within the rule announced in the authorities above referred to and does not create in the vendee any paramount right of renewal of the lease on the building which equity will protect or enforce.

It is true that there was testimony admitted, without objection, which tended to show that the goods and fixures conveyed to the appellant Kendrick were not worth the contract price of three thousand dollars, and that a portion of this sum was intended to compensate the appellees for the lease and good will of the business, and that the failure to include this lease and good will in the conveyance was due to carelessness and oversight,

but the rule that the terms of a written contract or conveyance cannot be varied or added to by parol evidence is not merely a rule of evidence, but is one of substantive law, and, in measuring the rights of the parties to a written contract or conveyance, which, on its face, is unambiguous and expresses an agreement complete in all its essential terms, the writing will control. Jones, Commentaries on Evidence, vol. 3, par. 434; Wigmore on Evidence, vol. 4, pars. 2400 and 2425.

The only other assignment of error which calls for a response is directed at the allowance of attorney's fees upon the dissolution of the injunction. The injunction was a mere incident to the relief prayed for in the original and amended bills of complaint, and, while the hearing was in vacation upon a motion to dissolve the injunction, the court appears to have, without objection, and upon full proof, adjudicated all the rights of the parties, as presented by the bill and answer. It was adjudicated that the appellants were not entitled to any equity in the possession and occupancy of the premises, and that the appellees have the right to the possession and occupancy of said property under and by virtue of the lease agreement, and that this right is exclusive to them. This was an adjudication of all the issues involved, and was, in effect, a final hearing on the merits, and, consequently, we think it was error to allow this attorney's fee. *Mims v. Swindle,* 124 Miss. 686, 87 So. 151; *Howell v. McLeod,* 127 Miss. 1, 89 So. 774; *Giglio v. Saia,* 140 Miss. 769, 106 So. 513; *Hunter v. Hankinson,* 141 Miss. 279, 106 So. 514, *Staple Cotton Co-Operative Ass'n v. Buckley,* 141 Miss. 483, 106 So. 747.

The decree of the court below will therefore be reversed in so far as it allowed attorney's fees as damages on the injunction bond; otherwise, it will be affirmed.

*Affirmed in part, and reversed in part.*