Thomas *et al. v.* Mississippi Power & Light Co.

(Division B.   Jan. 22, 1934.)

[152 So. 269.   No. 30844.]

Williams & Hunt, of McComb, for appellants.

814

**Price & Price,** of Magnolia, **Green, Green & Jackson,** of Jackson, and **Kennedy & Geisenberger,** of Natchez, for appellee.

818

Argued orally by **Garner Green** and **J. H. Price**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

Appellants operate a restaurant in McComb, in Pike county, and appellee is a public service corporation furnishing electric current to the inhabitants of said city.

At the time the bill of complaint was filed herein by appellants, they had become in arrears in the payment of their monthly bills for electric current, and, such default having continued, the public service corporation had threatened to discontinue service unless said arrears were paid. Appellants thereupon exhibited their bill of complaint against appellee, and alleged therein "that they jointly become the owner of stock in the defendant company, being certificate No. TJO857 five shares preferred stock, and certificate No. JO7728 one share of preferred stock, amounting in the aggregate to six hundred dollars; that at the time of the acquisition of said stock it was sold to them with the distinct understanding that at any time they so desired they might turn said stock back to the company and that the company would pay them the cash thereon at its par value within ten days from date, as they maintained a regular sales department for that purpose; that they have repeatedly offered said stock back to defendant company and asked that they comply with their contract and pay them as they represented and guaranteed to do at the time of the purchase of same." And the bill further alleged that after their monthly bills had become in arrears they had called on the local manager of the service corporation and had tendered him the stock and asked that the stock be charged with the light bills in arrears, and that the electric light service be continued on the indebtedness claimed to be due appellants on account of the said stock so tendered to the company, and that the said local manager refused to recognize the stock as a payment or basis of credit for electric current, and the bill prayed for a mandatory injunction to compel the company to accept said stock in payment of the monthly bills for electric current already furnished, and that the company be ordered to continue to furnish electric current in part payment for the aggregate sum claimed to be due appellants on said stock. Upon presentation of the bill to the chancellor he ordered the injunction to issue, and this

without any notice to the company, and the company has continued to furnish electric current to appellants without payment therefor, as required by said writ of injunction. The service corporation demurred to the bill, moved to dissolve the injunction, and gave notice therewith of its claim for damages on account of the wrongful issuance of the injunction. The demurrer was sustained, damages for attorney's fees and other such incidents were allowed on the bond, but the court refused to allow any recovery on the injunction bond for the electric current furnished after the issuance of the injunction and in obedience thereto. The complainants have appealed from the decree dissolving the injunction and dismissing the bill, and the company has taken a cross-appeal as to the action of the court in disallowing recovery for the current furnished while the injunction remained in force.

The bill is without merit, and the demurrer was properly sustained for more than one reason; but, since one is enough, we will state that which, so far as this case is concerned, may be regarded as a principal reason. A public utility is obliged by law to furnish its service to the general public without discrimination, to all alike so far as within the same class with respect to that service, and no devices are permitted, whether by contract or otherwise, whereby any so served shall receive any special privileges. And a public utility must so conduct its internal business that its ability to perform its public functions and furnish its public service shall not be impaired; it shall not be allowed to so contract in respect to its internal affairs as to distinctly cripple or destroy its power or ability to perform its public duties. And since the continuance, unimpaired, of its ability or power to furnish electric current, or other like physical service, requires necessarily the receipt therefor by the utility company at frequent intervals of the cash or its immediately available equivalent, it follows that, unless the law recognize and enforce the right of the utility to have and receive for its service at such frequent intervals the

cash therefor, or its immediately available equivalent, the law would fail on the one hand to so support it that it may certainly be enabled to do what the law on the other hand requires it to do.

It was in full recognition of the foregoing principles and in affirmance thereof that this court wrote its opinion in Central Power Co. v. Thomas, 145 Miss. 352, 110 So. 673, 111 So. 142, and we no more than apply these principles and the holding in that case to the case now in hand when we say that stock such as here involved cannot be tendered with obligatory force in payment of bills for electric service furnished or to be furnished. It is true that in that case the precise point was that a bill for electric current furnished could not be offset by an unliquidated demand for damages; but upon principle that case is a stronger authority for the rule we now more precisely express than is generally found in the books, for there the unliquidated demand grew out of a state of facts directly connected with the particular physical service, and was not, strictly speaking, a matter merely collateral thereto.

The authorities are uniform to the effect that a public service corporation cannot refuse to furnish its public service because the patron is in arrears with it on account of some collateral or independent transaction, not strictly connected with the particular physical service. For instance, electric companies frequently sell electric stoves, refrigerators, and the like. Such a company cannot cut off electric service because the patron is in default in the payment of a bill of that description. State v. Butte E. & P. Co., 43 Mont. 118, 115 P. 44; Miller v. Roswell G. & El. Co., 22 N. M. 595, 166 P. 1177, and authorities and annotations therein cited. And, in view of the general principles we have hereinbefore mentioned, the converse is equally true that a patron cannot demand and enforce the furnishing of electric current or other like public service on account of a collateral or internal liability not directly connected with the particular physi-

cal service. It is a necessary result of the general principles stated that a collateral liability must be settled in the modes provided by law otherwise than by injecting them into the current bills for the physical public service rendered, for, if this were not maintained as the rule, it is easily to be seen that the efficiency of the public service might be hampered and impaired, and, of course, the public interest comes first. A patron who, for instance, has furnished coal for the operation of the machinery to produce the electric current at the time or times when the current in question was furnished him might offset, for that would be the equivalent of cash furnished to the service corporation in immediate connection with and in the immediate production of the electric current in question, but a tender of stock in the company obviously raises only a collateral liability, one entirely independent and distinct, and is not cash or the immediately available equivalent thereof, as we now expressly hold the service company is entitled to receive in return for its obligation to render its general physical service.

Appellants complain that the court allowed attorney's fees on the dissolution of the injunction. When a bill states a good cause of action, wherein the injunction is only an incident to complete relief, and it is necessary to answer and take full proof on the merits of the principal cause of action asserted, then for the defense of the suit the fee of the solicitor is referred to the merits and not to the dissolution of the injunction, as, for instance, in Mims v. Swindle, 124 Miss. 686, 87 So. 151; Howell v. McLeod, 127 Miss. 1, 89 So. 774; Giglio v. Saia, 140 Miss. 769, 106 So. 513; Hunter v. Hankinson, 141 Miss. 279, 106 So. 514; Staple Cotton Co-Op. Ass'n v. Buckley, 141 Miss. 483, 106 So. 747; Kendrick v. Robertson, 145 Miss. 585, 111 So. 99; but when, as here, the bill states no cause of action and an injunction is dissolved on demurrer to the bill, there the injunction is the principal thing, in effect, that the defendant has to get rid of, and hence attorney's fees in such case are referable

to the injunction and are recoverable on the dissolution, as, for instance, in Thornton-Claney Lumber Co. v. O'Quin, 115 Miss. 857, 76 So. 732.

The issuance of the preliminary injunction in this cause was grossly improper, for two reasons: First, it was without notice, contrary to the established rule as stated in Pitts v. Carothers, 152 Miss. 694, 703, 120 So. 830. The chancellor resides within three or four miles of the place where this controversy arose. Nothing is shown by the bill or any other part of the record that it was impracticable to give notice or that the circumstances were so extremely urgent as to permit of no delay. That it was not urgent is sufficiently disclosed by the fact that the sheriff was not caused to serve the writ until three days after its issuance. Second, it was a mandatory injunction ordering the service company to continue to furnish electrical current, to deliver to the complainant that which was equivalent to property, without pay therefor. Nothing is better settled in this state, and nothing is or ought to be better understood, than the rule that a mandatory injunction should never issue unless the right to it is so clearly and certainly shown that there can be no reasonable doubt of its propriety, no probability that the defendant can make any valid objection to it, and no possibility that its justice can be controverted. Unless its grounds be inexpugnable, both sides must be heard before its issuance, and even then it should be refused unless irreparable and immeasurable injury would result. Gulf Coast Co. v. Bowers, 80 Miss. 584, 32 So. 113; Pearman v. Wiggins, 103 Miss. 11, 60 So. 1; Miles v. Fink, 119 Miss. 147, 80 So. 532; Montgomery v. Hollingsworth, 127 Miss. 359, 90 So. 79; Morris v. Trussell, 144 Miss. 343, 109 So. 854. At an early day it was declared that the delivery of property by mandate of injunction on an ex parte bill and without a hearing is indefensible in principle and inadmissible in practice. Martin v. Broadus, Freem. Ch. (Miss.) 40.

Since it was by force of the wrongful and unlawful in-

junction that the service company was compelled to continue to furnish electricity without pay, the company is as clearly entitled to recover therefor on the injunction bond, up to the time of the final dissolution of the injunction, as a defendant would be entitled, where, under an injunction of this kind, he had been compelled to deliver specific chattels to the complainant, which chattels the complainant had removed or destroyed or consumed in the use thereof. Moreover, when a complainant, contrary to the plain rules of law, established in the interest of good government and with the object to prevent arbitrary and oppressive abuse of preliminary legal process, persists in instigating such an abuse and in taking the temporary benefits thereof, we must and will allow damages on the bond in the fullest amount and over the entire field that such damages can upon any reasonable basis be sustained. In so far as it refused to allow against the injunction bond the amount due to be paid to the service company for current furnished while the injunction was in force, the decree is reversed, and the cause is remanded, with directions to proceed in accordance with this opinion.

Affirmed on direct appeal; reversed and remanded on cross-appeal.