LANDSTREET *et al. v.* MEYER *et al.*

(Division B.   March 24, 1947.)

[29 So. (2d) 653.   No. 36388.]

Wells, Wells, Newman & Thomas, of Jackson, for appellants.

828

**J. C. Floyd** and **A. B. Amis, Sr.,** both of Meridian, for appellee.

830

**Griffith, P. J.,** delivered the opinion of the court.

The Lamar Hotel in Meridian is one of the larger and better hotels in the State, its property having a value at the time of the hearing of about $450,000. It is owned by the Lamar Hotel Company, a corporation, there being approximately 3,900 shares of stock, of which, during the times hereinafter mentioned, appellant Landstreet owned 2,200 shares. The hotel is operated by Interstate Hotel Company, a corporation, under a ten-year contract made on September 29, 1937, under which arrangement the annual amount paid to the owner corporation, above all property and operating expenses and income taxes, is about $22,000. Landstreet acquired his stock in July, 1944, and on the 27th day of that month was elected president of the corporation. At that time the property was encumbered by first mortgage bonds in the sum of $217,000, bearing interest at 5% per annum.

Mr. Landstreet is a hotel executive of wide experience, of good connections, and of far more than ordinary ability. The presidents of the owner company theretofore had not been men who devoted themselves to hotel work,

and they had done little more than to function formally. Landstreet, upon his election as president, proceeded with vigor to place the affairs of the owner corporation in a better and more business-like shape, and first he succeeded in rearranging the bonded indebtedness so as to make the principal sum of the indebtedness $175,000, instead of $217,000, and the interest 4% instead of 5%. This he accomplished and completed before the end of that year.

Thereafter he continued actively in the direction of putting the business of the owner corporation in the best possible condition consistently with the encumbrance of the operating contract heretofore mentioned, and at the time of the hearing and decree herein he had completed the main features of the work, leaving thereafter to be done by the president substantially about as follows: (1) To carefully examine the monthly and annual statements of the operating company, the statements being furnished by the auditors of the latter company; (2) to act upon any feature wherein he found that the operating contract was not being performed and all funds properly accounted for; (3) to pay the income and franchise taxes of the owner company; and (4) to pay the salaries of its auditors. Mr. Landstreet, who lives in Memphis, and has three other hotels under his executive care, visited the Meridian hotel property making a careful inspection thereof, about once a month or sometimes a little oftener. One of his other hotels is at Laurel, in the same general territory.

Up to the time next to be mentioned none of the presidents of the owner corporation had been paid any salary. At the annual stockholders' meeting on May 14, 1945 Landstreet and four others were elected directors, and thereafter on the same day the board of directors met, re-elected Landstreet as president, and on a vote of three to two the president's salary was fixed at $5,000 per annum, Landstreet casting the deciding vote in favor thereof. On January 5, 1946, after suit herein was filed,

a special meeting of the stockholders was held when a resolution was adopted ratifying the aforementioned action of the directors in the matter of the president's salary. This resolution was adopted by the vote of Landstreet's majority in stock over the opposition and protest of the minority stockholders.

On November 13, 1945, the minority stockholders filed their bill charging that the salary order mentioned in the foregoing paragraph was void, and praying an injunction against the payment of the salary to Mr. Landstreet, conceding, however, that in seeking equity they must be willing to see equity done, and that the court could and should award to Landstreet such a sum as salary as would be fair and just compensation to him for services rendered after May 14, 1945.

Much of the debate has been upon the question whether the order of the board of directors in which the president cast the deciding vote in his own favor was (1) valid, or was (2) void, or was (3) voidable. There are authorities apparently on both sides of the issue under numerals (1) and (2), but we think the weight of the cases will support the conclusion that the order of the board was not void, but was voidable at the suit of minority stockholders on a cogent showing by them that the salary fixed, under circumstances such as above set out, was clearly excessive and wasteful as against the minority. And that a resolution of the stockholders, carried in the manner above stated, adds nothing to the force of the order of the board. The authorities will appear in the reporter's abstracts of the briefs.

Debate has been focused, also, upon the question whether in fixing a salary, such as this, there may be taken into account any valuable service rendered by the officer before the date of order or resolution fixing the salary, it being manifest from the record that the board, in fixing the president's salary, took into consideration the services of Mr. Landstreet in securing the very advantageous rearrangement of the bonded indebtedness, but

which, as already mentioned, had been done and completed before May 14, 1945. If this completed service could have been taken into consideration it would have justified the salary as fixed, at least for the first year after May 14, 1945.

By the clear weight of authority; and upon sound reasons of practical policy, corporate salary awards may not, over the objections of the minority, be based on services already rendered and concluded, unless at the time of their rendition there was an agreement, express or implied, with the corporation or its owners or authorized representatives that compensation should be paid therefor. Numerous cases to this effect are annotated in 40 A. L. R. pp. 1432-1440, and see 3 Thompson on Corporations, Sec. 1849 (1736). Admittedly there was no express agreement in this case before May 14, 1945, and the record is searched in vain for anything upon which it may be dependably said that there was any implied agreement or understanding with the corporation.

If, then, the services in refinancing the bond mortgage were the only services rendered by Mr. Landstreet other than those set out in the third paragraph of this opinion we would be entirely satisfied with the action of the Chancellor in cutting down the salary to $150 per month, and this all the way back to May 14, 1945, including therein the president's traveling expenses, and we may add, to prevail only so long as Mr. Landstreet himself is the president, bringing to it as he does the high qualifications which admittedly he possesses. The minority stockholders are not to be bound to the salary mentioned in this paragraph if and when some other person should succeed to the executive position.

But the services mentioned in the foregoing paragraphs were not all that were rendered by Mr. Landstreet after May 14, 1945, and before the date of the decree herein on March 6, 1946. Within the dates last aforesaid he was further devoting largely of his time and efforts to the task of putting the entire corporate business into a better

shape, and to the development of a set-up which thereafter would go forward with some permanence to the substantial advantage of the corporation, two of which we may mention without going into any detail: The final working out of what is called the ''Predecessor's Base'' for the computation of the income taxes of the corporation and by which it saved for that year and will save for the years to follow about $3,000 annually, and the working out and establishment of a better basis for the administration of, and the accounting for, the Maintenance Reserve between the hotel company and the operating company, by which that fund was increased to the extent of about $8,400; and there were other items of some aggregate importance. These, as we have already observed, had all been about concluded at the date of the decree, as best we can make out from the record.

Corporations must be allowed to function under majority control, as do most institutions in this country, so long as the majority does no actual wrong to the minority or to others. Courts are not to be called on to operate or control them except in cases wherein such interference is essential to justice; and in interfering with what majority has done in such a case as this, real caution must be taken not to work a wrong in striving towards the right. Upon a searching review of this record we think the risk of doing a wrong is too great in requiring that what was paid to Mr. Landstreet between the dates mentioned in the foregoing paragraph shall be in any part refunded by him. We therefore modify the decree by striking therefrom the requirement that he shall refund the sum of $2,400, but in all other respects the decree will be affirmed.

Affirmed in part, reversed in part, and modified decree here.