293 So.2d 438 (1974)
Dr. O.B. CROCKER et al.
v.
FARMERS & MERCHANTS BANK, BRUCE, Mississippi, et al.
No. 47455.
Supreme Court of Mississippi.
April 1, 1974.
Rehearing Denied May 13, 1974.
*439 L.G. Fant, Jr., Holly Springs, Armis E. Hawkins, Houston, Ottis B. Crocker, Jr., Bruce, for appellants.
Perry, Phillips, Crockett & Morrison, Jackson, for appellees.
*440 BROOM, Justice:
This case is appealed from a decree of the Chancery Court of Calhoun County, Mississippi. Involved is an injunction related to a dispute chiefly among directors of the Farmers & Merchants Bank. We reverse.
Appellees sought a preliminary mandatory injunction to require appellants and defendant W.W. Beckett to vote all of the common stock owned by them, or under their control, for the present bank directors, all of whom had been nominated for reelection. Ground for the injunction was the averment that the defendants together with certain of the complainants had signed and were bound by the following writing dated July 29, 1970:
"We the undersigned agree and pledge ourselves individually not to seek control of the Farmers & Merchants Bank, Bruce, Mississippi, through ownership or control of stock by ourselves or any other person, and by proxy or otherwise."
In their bill the appellees alleged that the directors and management of the bank notified each stockholder in writing of the annual shareholders meeting and that the management would nominate for reelection the same board of directors. The notice also solicited proxies for that purpose. Eleven directors were in office as such with individual appellees (complainants) making up seven of the eleven. The remaining four directors consisted of appellants (defendants) W.W. Beckett and Ottis B. Crocker, Jr., plus Dr. Charles Crocker and A.D. Spratlin. The bill averred that Defendant Ottis B. Crocker, Jr., acting in concert with the defendants Beckett and Dr. O.B. Crocker, filed with the secretary of the bank a nomination for directors, including four not then serving as members of the board, to-wit, Joe Grist, Billy Wayne Chrestman, W.D. Brand and Robert Lee Logan. Appellees charged in their bill that the action of the defendants (appellants) in seeking to vote their stock for the nominees not presently serving as members of the board was "in complete willful and wanton disregard of their obligations under said agreement."
Without any legal process upon the defendants, the lower court by fiat directed the issuance of a preliminary injunction. Included in the preliminary writ of injunction were the defendants named in the bill and it was also directed to the officers, directors and shareholders of the bank. The injunction prohibited the defendants, and any and all persons acting under their persuasion, influence, inducement, or in concert with them, from conducting any meeting of shareholders or making any other actions relating to the election of directors of said bank and from soliciting any proxies or purchasing or selling any shares in said bank, all pending further order of the court. A bond in the sum of $2500 was required of the complainants before the injunction was to be issued. Bond was made and the writ issued as of January 25, 1972.
By separate answer and crossbill Dr. O.B. Crocker and Ottis B. Crocker, Jr. admitted executing the "no-control" agreement but stated that its purpose was to induce Federal Deposit Insurance Corporation to permit Dr. O.B. Crocker to remain on the board of directors. FDIC had required that he not be a director because of matters related to his income tax status. Appellants in their crossbill alleged that the complainants, appellees herein, were signatories to said agreement and also in violation of it if it has legal meaning. The Crockers' crossbill sought damages of $300,000 related to the depreciation of the market value of shares of stock held by them in the bank, and additional damages to cover their attorney's fees. Also, on January 26, 1972, by motion they sought to have the bond in the penal sum of $2,500 increased. By separate motion they sought to have the temporary injunction dissolved. Subsequently the bill of complaint of appellees was amended asking that there be permitted no 1972 shareholders' annual meeting of the corporation, and further *441 that the present directors remain in office until the annual election in 1973.
Issue was joined and the court began to hear the matter on February 28, 1972.
Complainants announced that they had no objection to the motion to dissolve the temporary injunction "insofar as it relates to any stockholder, officer or director other than the three named defendants, the two Crockers and Beckett." Appellees at that time also agreed to the dissolution of the injunction as to Beckett, who was by the court let out of the injunction. At the conclusion of the hearing, the court dissolved the temporary injunction as to all parties other than Dr. O.B. Crocker and Ottis B. Crocker, Jr.
The final decree of the court was partly mandatory as if to provide specific performance. In part it was prohibitory. Prompt holding of the annual 1972 meeting of the shareholders was decreed. Also the decree ordered an injunction prohibiting appellees (complainants: Ussery, Quillen, Edwards, Bowles and Bryant) and appellants (defendants: Beckett, Ottis B. Crocker, Jr. and Dr. O.B. Crocker) from any of the following actions, to-wit: voting any proxy in the shareholders meeting; voting any stock which they acquired on or after July 29, 1970; transferring any such stock to another with a view of getting it voted; undertaking to control, persuade or influence the voting of any stock by its owner or the giving or refusing to give proxy to another or others to vote any such stock. The decree required that no stock transferred after April 17, 1972 (the date of the issuance of the preliminary injunction) could be voted at the meeting. By its decree the court also: enjoined appellants from controlling or seeking to control the bank as long as the "no-control" agreement shall continue in force and effect; modified the preliminary injunction to conform to the final decree; denied the claim of the appellants wherein they sought to represent as a class other shareholders for whom damages were sought; and denied all claims for damages by appellants individually or as a class.

I.
The first issue before us is whether or not the so-called "no-control agreement" is a proper basis of an injunction which was mandatory in part and prohibitory in a larger measure. Careful study of this agreement shows clearly that it is vague and ambiguous when construed in the light of circumstances revealed by the record before us.
Usage of the word "individually" in the agreement appears to conflict with the subsequent phrase "through ownership or control of stock by ourselves or any other person, and by proxy or otherwise." "Individually" may logically be construed to mean no signatory would seek to acquire or hold fifty-one percent (51%) of stock in the corporation. Subsequent language seems to refer to joint action of the signatories. No expiration or termination date was stated therein. All parties who signed the agreement may have thought that they entered into some sort of a contract. However, as a matter of law, the instrument is so lacking in qualities of discernibility, definiteness and completeness that it is not a proper basis for the injunctive decree appealed from. Regardless of whether or not the agreement could be construed as a contract, it is not a proper basis for a prohibitory injunction or specific performance here because it is not sufficiently complete and distinct in its terms, and its plain and definite meaning is not discernible. The agreement does not show with adequate certainty that the minds of the parties met or that the parties mutually agreed as to all of the details. Hutton v. Hutton, 239 Miss. 217, 119 So.2d 369 (1960); Westbrook v. McCarty, 160 Miss. 455, 134 So. 193 (1931); Welsh v. Williams, 85 Miss. 301, 37 So. 561 (1904); Echols v. New Orleans, Jackson & Great Northern R.R., 52 Miss. 610 (1876).
*442 We follow the general rule that in order to properly decree specific performance a court must be able to look at the instrument in question and discern what performance is required. Etheridge v. Ramzy, 276 So.2d 451 (Miss. 1973); 49 Am.Jur. Specific Performance section 22 at 34, and section 25 at 38 (1943).
The injunction was also erroneously issued because the bill of complaint did not charge sufficient material facts to justify issuance of the injunction. In essence the bill simply charged that the complainants had no adequate remedy at law, and that they would suffer irreparable damages unless the injunction was issued. The averment in this regard amounted to what is more clearly a legal conclusion than an averment of facts. Such averments were insufficient for failure to allege all the material facts from which the chancellor could obviously discern upon what precise grounds or bases irreparable harm would result. V. Griffith, Mississippi Chancery Practice section 446 (2d ed. 1950).
Also, we note that the evidence was insufficient to justify issuing the final injunction here. Perusal of the testimony does not demonstrate that usage of the injunctive process was essential to protect property or other rights from irreparable injury. If it be admitted that offering of nominees to the board of directors by Ottis B. Crocker, Jr. and Joe Grist was not proper, there still is lacking in the evidence proof of resulting injury flowing from the nominations. 42 Am.Jur.2d Injunctions section 48 at 787 (1969). Evidence before us does not reveal what damage, if any, would have been inflicted upon any person had the nominees in question been elected. Moreover, stipulation of counsel as to who held how many shares of stock and proxies does not indicate that appellants could have succeeded in electing their nominees rather than the nominees presented by the appellees.
Not only was the agreement sought to be enforced vague, indefinite and ambiguous, the evidence of injury in this case was not sufficient to justify judicial interference with the management of the corporation. The court should not enter the area of corporate management except in cases where judicial action is essential to justice. Landstreet v. Meyer, 201 Miss. 826, 29 So.2d 653 (1947). The general rule is that there should be no judicial interference with the right of shareholders to conduct and participate in corporate meetings. 19 Am.Jur.2d Corporations sections 705 and 706 at 208-09 (1965). We note that Mississippi Code 1942 Annotated section 5309-59 (Supp. 1972) [now Mississippi Code Annotated section 79-3-63 (1972)] grants to a shareholder the right to vote either in person or by proxy at elections for directors. See also People ex rel. Arkansas Valley Sugar Beet & Irrigated Land Co. v. Burke, 72 Colo. 486, 212 P. 837 (1923). The preliminary injunction (which was continued in the final decree) based upon the ambiguous "no-control" agreement invaded the statutory rights of shareholders to vote and participate in elections. Voting rights in effect were severed from ownership of shares, and directors were by fiat perpetuated in office.
It was error upon the facts of this case for injunctive process to so drastically restrict the rights of shareholders, officers and directors. We recognize that in extremely urgent cases or in cases where grave injustices and great irreparable injuries are clearly about to occur, an equity court might justifiably regulate, or even enjoin, the holding of elections for a time. Here the proof and pleadings do not reveal such a case.
In his final decree the chancellor provided for a writ of injunction permanent in nature which enjoined each signatory to the "no-control" agreement, namely, Jack W. Ussery, E.W. Quillen, W.W. Beckett, C.C. Edwards, Ulon Bowles, Ottis B. Crocker, Jr., J.S. Bryant and Dr. O.B. Crocker, from voting any proxy or voting any stock owned by them or acquired by them since July 29, 1970. They were also *443 enjoined from undertaking to control, persuade or influence the voting of any stock, et cetera. It was also decreed that no stock sold or transferred on or subsequent to April 17, 1972 should be voted at the shareholders meeting. Said named parties were enjoined from controlling or seeking to control the bank so long as the "no-control" agreement (which had no expiration date) shall continue in force and effect.
The final decree provided that the 1972 annual meeting of shareholders should be called as speedily as possible. In fairness, the chancellor directed the injunction to all parties who were signatories to the agreement. He applied it equally to all of them, the appellees as well as the appellants. For being permanently enjoined by the final decree, the original complainants (appellees) cross-appealed.
For the reasons set forth in this opinion, the injunctions should not have been issued, and therefore the decree is being reversed on direct appeal as well as cross-appeal.

II.
The next question before us is whether or not the appellants had the right which they attempted to assert by way of crossbill to maintain a class suit (for damages for depreciation of their stock) on behalf of all the shareholders named in the injunction. Upon his own motion, the chancellor caused the preliminary injunction to issue against all shareholders. The injunction was later by agreement dismissed as to those who were not parties. Numerous shareholders included in the preliminary injunction were not parties to the suit, and the chancellor ruled that the appellants could not bring a class action for them. In this regard we affirm the action of the chancellor because the other shareholders did not have such common or harmonious community of interest with the appellants to justify that they be represented by appellants in the class action. 67 C.J.S. Parties § 13 at 918, 921 (1950); V. Griffith, Mississippi Chancery Practice section 138 (2d ed. 1950).

III.
Appellants contend that the lower court erred for failure to assess damages in favor of them. They say that since the original injunction was dissolved except as to Dr. O.B. Crocker and Ottis B. Crocker, Jr., as a matter of law it was wrongfully issued and that they should have been granted damages pursuant to sections 1352 and 1353 Mississippi Code 1942 Annotated (1956). Appellants cite the cases of Johnson v. Howard, 167 Miss. 475, 141 So. 573 (1932) and Yale v. Baum, 70 Miss. 225, 11 So. 879 (1892). Those cases were to the effect that an injunction was wrongfully sued out where the bill of complaint for the injunction was dismissed. In the case at bar the bill of complaint was not dismissed.

IV.
It follows that for reasons appearing in this opinion, none of the injunctions issued, including the injunction against appellees and cross-appellants Bowles, Bryant, Edwards and Ussery, can be allowed to stand. To that extent, we reverse as to cross-appellants.
Upon remand, the injunctions shall all be dissolved and damages assessed in favor of the appellants. Cases which contain discussion of various factors involved in dealing with damages are digested under "Injunction," 8 Mississippi Digest (1936).
Reversed in part and affirmed in part on direct and cross-appeals; remanded for assessments of damages to appellants only.
RODGERS, P.J., and INZER, SMITH and ROBERTSON, JJ., concur.