580 So.2d 1267 (1991)
Jimmy DUKE and Peggy Duke
v.
Lillian J. WHATLEY, Charley Whatley and Glenda Whatley.
No. 89-CA-1320.
Supreme Court of Mississippi.
May 8, 1991.
*1268 James C. Helveston, Edwards Storey Marshall & Helveston, West Point, for appellant.
Lee S. Coleman, Coleman & Coleman, West Point, for appellee.
Before DAN M. LEE, P.J., and PRATHER and BANKS, JJ.
DAN M. LEE, Presiding Justice, for the Court:
This is an appeal from the Clay County Chancery Court wherein the chancellor denied the plaintiff's request to specifically enforce an agreement between Mrs. Lillian J. Whatley and Jimmy and Peggy Duke. At the end of a one day hearing, Chancellor Brand rendered a bench decision against the plaintiffs. The opinion concluded that the litigants were parties to a contract which was not enforceable in that the agreement lacked specificity of price as required by the law governing contracts for the sale of realty and the remedy of specific performance. Subsequent to his bench decision, the chancellor entered a formal decree which memorialized the prior bench opinion. The plaintiffs, Jimmy and Peggy Duke, being aggrieved, have appealed assigning one issue, which is the central issue of the suit, as error.
ISSUE: Is the January 15, 1987, agreement executed by Jimmy Duke, Peggy Duke and Lillian J. Whatley sufficiently specific and distinct in its terms and plain and definite in its meaning so as to support a decree for specific performance?
After a review of the record and briefs and for the reasons that follow in this opinion, we affirm the final decree entered by the chancellor, finding the agreement between the parties lacking the requisite specificity of purchase price needed to support the remedy of specific performance.

FACTS
Mrs. Lillian J. Whatley is a Tennessee resident who owned one hundred and seven (107) acres of land in rural Clay County, Mississippi, located approximately seven miles from the city of West Point. This property had been in Mrs. Whatley's late husband's family for many years and was apparently the family homestead. Jimmy and Peggy Duke live in a rural residential area which is adjacent to the subject property. At some point in 1985, the Dukes entered into a lease/option agreement with Mrs. Whatley wherein the Dukes leased this property with an option to purchase at the end of the lease period for a purchase price of fifty thousand dollars [$50,000.00]. The Dukes used this property as pasture land in connection with their cattle operation.
The original lease/option agreement expired without the option being exercised by the Dukes, and the original contract is not in issue here. However, near the end of the expiration of this lease, the Dukes *1269 made plans to have a new, similar agreement executed with Mrs. Whatley. First, Mr. Duke contacted a local attorney who drafted a, "REAL PROPERTY LEASE AND OPTION TO PURCHASE." Terms of the agreement included the following.
REAL PROPERTY LEASE AND OPTION TO PURCHASE
This Contract made and entered into this day by and between LILLIAN J. WHATLEY of [address omitted] hereinafter referred to as SELLER, and JIMMY D. DUKE and his wife, PEGGY S. DUKE, of Clay County, Mississippi, hereinafter referred to as BUYERS, WITNESSETH:
1.
For and in consideration of the mutual promises and agreements of the Seller and of the Buyers herein contained, the Seller hereby leases to the Buyers the land situated in the County of Clay, State of Mississippi, described as follows, to-wit:
A tract of land containing 107 acres, more or less, 75 acres of which is located in Section 14, Township 17, Range 5 East, and 32 acres of which is located in Section 11, Township 17, Range 5 East; and being the same land conveyed to John O. Whatley and his wife, Lillian J. Whatley, by Warranty Deed dated January 8, 1962, and recorded in Clay County Deed Record 94 page 503 LESS several lots conveyed off of said land by John O. Whatley and Lillian J. Whatley, leaving 107 acres, more or less.
Buyers agree to pay Seller One Thousand Five Hundred Dollars ($1500.00) in each of the years 1987, 1988, and 1989, payable in two (2) payments of Seven Hundred and Fifty Dollars ($750.00) each on January 1st and November 1st in each of the said three years. Said annual payments of $1,500.00 shall be considered as lease payments, but in the event the Buyers exercise the option to purchase, then all said payments made shall apply on the purchase price.
2.
This option may be exercised by the Buyers at any time while the offer herein shall remain in force by mailing, telegraphing or delivering in person a written notice of acceptance of the offer herein to Mrs. Lillian J. Whatley, who is the widow of John O. Whatley, at [address omitted]. The offer herein shall remain irrevocable for a period of three (3) years from the date hereof.
3.
Upon payment by the Buyers to the Seller of the sum of $50,000.00, less credit for lease payments made, the Seller agrees to execute and deliver to the Buyers a good and sufficient general warranty deed conveying to the Buyers merchantable, fee simple title to said land, free from all liens, encumbrances and exceptions, except the lien of taxes for the then current year, which shall be pro-rated by and between the Seller and the Buyers as of the date of delivery of the Warranty Deed.
WITNESS OUR SIGNATURES, in duplicate originals, this the 10th day of December, 1986.
 /s/ _______________________
 LILLIAN J. WHATLEY
 SELLER
 /s/ _______________________
 JIMMY D. DUKE
 BUYER
 /s/ _______________________
 PEGGY S. DUKE
 BUYER
STATE OF TENNESSEE COUNTY OF SHELBY
Personally appeared before me, the undersigned authority of law in and for the State and County aforesaid, LILLIAN J. WHATLEY, who acknowledged that she signed and delivered the above foregoing Lease and Option to Purchase Real Property on the date therein stated.
Given under my hand and official seal, this the ____ day of December, 1986.
 /s/ _______________________
 NOTARY PUBLIC
*1270 My commission expires ____.
Mr. Duke drove to Tennessee and delivered the agreement to Mrs. Whatley. Within a few days, Mrs. Whatley made significant modifications in the agreement and returned the document by mail. The Dukes readily noticed that Mrs. Whatley had lined through almost all references to an option contract in the agreement. Mrs. Whatley also initialed each section which she omitted with an "L.W.," to publish the fact that she was changing the terms. She omitted everything in the language which is quoted above with the exception of the first sentence which addressed lease payments. Mrs. Whatley omitted all terms which concerned purchase price, the application of lease payments to a purchase price, the conveyance by deed and all references to "option to purchase" contained in the body of the agreement.
The document, after modified by Mrs. Whatley, provided the following.
REAL PROPERTY LEASE AND OPTION TO PURCHASE
This Contract made and entered into this day by and between LILLIAN J. WHATLEY of [address omitted] hereinafter referred to as SELLER, and JIMMY D. DUKE and his wife, PEGGY S. DUKE, of Clay County, Mississippi, hereinafter referred to as BUYERS, WITNESSETH:
1.
For and in consideration of the mutual promises and agreements of the Seller and of the Buyers herein contained, the Seller hereby leases to the Buyers the land situated in the County of Clay, State of Mississippi, described as follows, to-wit:
A tract of land containing 107 acres, more or less, 75 acres of which is located in Section 14, Township 17, Range 5 East, and 32 acres of which is located in Section 11, Township 17, Range 5 East; and being the same land conveyed to John O. Whatley and his wife, Lillian J. Whatley, by Warranty Deed dated January 8, 1962, and recorded in Clay County Deed Record 94 page 503 LESS several lots conveyed off of said land by John O. Whatley and Lillian J. Whatley, leaving 107 acres, more or less.
Buyers agree to pay Seller One Thousand Five Hundred Dollars ($1500.00) in each of the years 1987, 1988, and 1989, payable in two (2) payments of Seven Hundred and Fifty Dollars ($750.00) each on January 1st and November 1st in each of the said three years. Said annual payments of $1,500.00 shall be considered as lease payments, but in the event the Buyers exercise the option to purchase, then all said payments made shall apply on the purchase price. "L.W." /s.
2.
This option may be exercised by the Buyers at any time while the offer herein shall remain in force by mailing, telegraphing or delivering in person a written notice of acceptance of the offer herein to Mrs. Lillian J. Whatley, who is the widow of John O. Whatley, at [address omitted]. The offer herein shall remain irrevocable for a period of three (3) years from the date hereof.
3.
Upon payment by the Buyers to the Seller of the sum of $50,000.00, less credit for lease payments made, the Seller agrees to execute and deliver to the Buyers a good and sufficient general warranty deed conveying to the Buyers merchantable, fee simple title to said land, free from all liens, encumbrances and exceptions, except the lien of taxes for the then current year, which shall be pro rated by and between the Seller and the Buyers as of the date of delivery of the Warranty Deed. "L.W." /s
WITNESS OUR SIGNATURES, in duplicate originals, this the 10th day of December, 1986.
 /s/ _______________________
 LILLIAN J. WHATLEY
 SELLER
*1271
 /s/ _______________________
 JIMMY D. DUKE
 BUYER
 /s/ _______________________
 PEGGY S. DUKE
 BUYER
STATE OF TENNESSEE COUNTY OF SHELBY
Personally appeared before me, the undersigned authority of law in and for the State and County aforesaid, LILLIAN J. WHATLEY, who acknowledged that she signed and delivered the above foregoing Lease and Option to Purchase Real Property on the date therein stated. "L.W." /s.
Given under my hand and official seal, this the 6 day of January, 1987.
 /s/ _______________________
 NOTARY PUBLIC
My commission expires 11-4-90.

EXHIBIT A.
Additionally, at the bottom of the second page of this two page agreement, Mrs. Whatley added the following paragraph in her own handwriting.
Should I, Lillian J. Whatley decide to sell at end of three years, I will give Peggy and Jimmy Duke the first chance to buy.
1/5/87 [Lillian J. Whatley] /s
When the Dukes received the contract in the mail and noted the changes that Mrs. Whatley made, they fully accepted the revisions and returned the agreement to their attorney who recorded the document at the Clay County Courthouse. The Dukes have made all payments which were required under the agreement. Under fundamental principles of contract law, the agreement which the Dukes sent to Mrs. Whatley was an offer which she rejected by way of a counter offer in that she changed the terms of the agreement. Mrs. Whatley's counter offer was fully accepted by the Dukes.
Despite Mrs. Whatley's promise to extend to the Dukes a "first chance to buy," she sold the property to her step son and daughter-in-law, Charley and Glenda Whatley, in March of 1989. The purchase price was thirty-five thousand dollars [$35,000.00].
When Mrs. Whatley married Charley's father, Charley was a grown man; however, Charley and Mrs. Whatley have always had a close, familial relationship. Charley refers to Mrs. Whatley as "mother," and Mrs. Whatley refers to Charley and Glenda as her son and daughter-in-law, whereas they are actually her step son and step daughter-in-law.
Charley and Glenda Whatley live in Saraland, Alabama. Charley Whatley was raised on this land, and he purchased the property with a view toward returning there and building a home. Mr. Whatley stated that he considered this property to be home, and a strong motivation behind his purchase of this land was a desire to keep it in the family.
Charley Whatley described the circumstances surrounding his purchase of the property.
... On  Right around the first of March. I had an aunt to die over in Columbus and  well, was buried over at Columbus. I was going to write out an offer and mail it to my mother when we got this call of the funeral, and I just hurriedly wrote it out at work the night before we came up here and just gave it to her in a sealed envelope. That was on a Friday, and I believe it was on Tuesday of the next week, and she called me and said, `I'll take it.'
Record at 40.

ANALYSIS
A question of law is before the Court in this appeal. What type of agreement did the parties have, and is it such an agreement which can be specifically enforced under the contract and real property laws of this state? "The judicial task is to view the terms of the document, find their legal meaning, and adjudge their enforceability vel non. The familiar manifest error/substantial evidence rules have no application to our appellate review of such questions." Busching v. Griffin, II, 542 So.2d 860, 863 (Miss. 1989).
*1272 The written decree issued by the chancellor referred to the agreement as either an option contract or a right of first refusal. This reference to the agreement between the parties as either an option contract or a right of first refusal begs a question. Which of the two is at issue here? There is an important distinction between options and first refusal (pre-emptive) rights.
At the outset, the difference between an ordinary option and a pre-emptive right should be noted. In a typical option the optionee has the absolute right to purchase for a definite consideration. A pre-emptive right involves the creation of the privilege to purchase only on the formulation of a desire on the part of the owner to sell.
Pace v. Culpepper, 347 So.2d 1313, 1315-16 (Miss. 1977).
Williston on Contracts describes the distinction between options and first refusal contracts as follows.
While options and the so-called `right of first refusal' are sometimes confused, there is a clear and classic distinction. The option compels performance within the time limit specified, or if none is mentioned, then within a reasonable time, whereas the right of first refusal has no binding effect unless the offeror decides to sell.
The right of first refusal, or first right to buy, is not a true option but is a valuable prerogative. It limits the right of the owner to dispose freely of his property by compelling him to offer it first to the party who has the first right to buy. Nor may the owner accept an offer made to him by a third party.
In the case of an option, as noted above, the option-giver has no choice but to sell when the option is accepted according to its terms. What is usually provided is that there will be an expression of acceptance communicated to the option-giver, or that payment according to the terms of the option will be made within the time limit. Thus, an option is an offer made irrevocable by contract; however, it may be made conditional upon the happening of some specified event.
... The option gives a clear right to the option-holder, regardless of the wishes of the option-giver, whereas the `right of first refusal' or `preemption' is conditioned upon the willingness of the owner to sell; it can be enforced by specific performance where such willingness can be proved.
Williston on Contracts, § 1441A (Jaeger, 3d ed. 1968).
Turning now to the document at hand, the agreement which the Dukes submitted to Mrs. Whatley clearly obligated the latter to offer her land for sale at the end of the lease period. The terms of the agreement would have bound Mrs. Whatley as offeror with the Dukes as offeree. Ergo, it was a true option. For under a true option, the seller is obligated to go through with the sale while the option remains in force. Mrs. Whatley rejected the idea of an option contract by making material changes in the agreement and proposed a right of first refusal. Under a right of first refusal, no obligation matures on the seller's part unless the seller forms a desire to sell. "Should I, Lillian J. Whatley decide to sell at the end of three years, I will give Peggy and Jimmy Duke the first chance to buy." [Emphasis added]. Without question, the agreement between the parties had no binding effect, unless Mrs. Whatley decided that she wanted to sell her land at the end of the three year lease period. Thus, Mrs. Whatley extended an offer for a right of first refusal which the Dukes accepted.
A similar agreement was before this Court in 1926, in the case of Giglio v. Saia, 140 Miss. 769, 775, 106 So. 513, 513 (1926). In Giglio, the lessee of a store building had a five year written contract with the following provision.
The party of the second part is to have the right and privilege of renting said store for another period of five years at the termination of this contract, upon such terms and for the payment of such rent as may be agreed upon between the parties hereto at that time, necessary *1273 repairs to be made by the party of the first part.
Giglio, 140 Miss. at 775, 106 So. at 513. Before the expiration of the lease, the appellant attempted but failed to rent the store for another five years. Id. at 775, 106 So. at 513. The lessor refused to renew the lease, and the lessee sought the remedy of specific performance and an injunction against any attempt by the lessor to interfere with lessee's use of the building. Id. at 775, 106 So. at 513. This Court declined to recognize specific performance because the agreement was riddled with indefinite and unresolved terms.
The specific performance of a contract will not be decreed unless it is certain in its terms. Montgomery v. Norris, 1 How. 499; Nickerson v. [Fithian] Land Co., 118 Miss. 722, 80 So. 1. Tested by this rule the specific performance here sought cannot be decreed, for the renewal agreement not only does not set forth the terms on which the appellant may rent the building for another period of five years, but, on the contrary, expressly provides that he may do so `upon such terms and for the payment of such rent as may be agreed upon between the parties hereto.' This leaves everything pertaining to the renewal open for determination by the parties thereto except the period of time for which it is to run. That is to say, they must agree on not only the amount of rent to be paid, but upon the conditions, covenants, and limitations on which the lessor may be willing to renew the lease. Renewal agreements much more specific than this one in that they leave only the renewal rental to be fixed by the future agreement between the parties have generally been held unenforceable and void for uncertainty and indefiniteness. See note to Young v. Nelson, 121 Wash. 285, 209 P. 515, 30 A.L.R. 568. See, also, 16 R.C.L. 886; 35 C.J. 108, 109; Howard v. Tomicich, 81 Miss. 703, 33 So. 493.
Giglio v. Saia, 140 Miss. 769, 776, 106 So. 513, 513 (1926).
To like effect is Allen v. Powell, wherein a lease for agricultural land contained a first refusal clause.
At the termination of this lease the Lessor grants the Lessee the privilege of first refusal to lease said lands for the three period [sic] immediately following the term of this lease, that is, provided he meets the terms and conditions suitable to the Lessor.
Allen v. Powell, 260 So.2d 182, 183 (Miss. 1972).
The lessees sought specific performance, and the Allen Court applied the rationale of Giglio holding the agreement too indefinite for the enforcement of specific performance since the terms upon which the lease could be renewed were not included. Allen v. Powell, 260 So.2d 182, 184 (Miss. 1972).
This Court is further instructed by Etheridge v. Ramzy, wherein a "Buy and Sell Agreement  letter of intent," to purchase stock was held too uncertain and indefinite to allow specific performance. Etheridge v. Ramzy, 276 So.2d 451, 456 (Miss. 1973). The Court found the agreement to be nothing more than a memorandum of intent to enter into a future contract as opposed to an enforceable option since the agreement lacked essential terms of covenants. Etheridge, 276 So.2d at 454.
When the importance of these provisions is considered in light of the language of the paragraph, it is obvious that further negotiations must have been contemplated on the terms of the letter, and as such, the letter is nothing more than a memorandum of intent. Therefore, the contract of July 12, 1971 is too indefinite upon essential terms to be enforced.
Etheridge, 276 So.2d at 456.
Turning now to the facts at bar, we are compelled to draw the same conclusion. Without some written evidence of purchase price or a method of determining a purchase price, then the agreement would have to be regarded as merely a memorandum of intent. While courts may supply reasonable terms which the parties omitted in the contracting process, such as a time for performance, Smith v. Mavar, 198 Miss. 170, 175, 21 So.2d 810, 811 (Miss. 1945), essential terms such as price cannot *1274 be left as open ended questions in contracts which anticipate some future agreement.
However, unless an agreement to make a future contract is definite and certain upon all the subjects to be embraced, it is nugatory. To be enforceable, a contract to enter into a future contract must specify all its material and essential terms and leave none to be agreed upon as the result of future negotiations. Where a final contract fails to express some matter, as, for instance, a time of payment, the law may imply the intention of the parties; but where a preliminary contract leaves certain terms to be agreed upon for the purpose of a final contract, there can be no implication of what the parties will agree upon. If any essential term is left open to future consideration, there is no binding contract, and an agreement to reach an agreement imposes no obligation on the parties thereto.
Etheridge v. Ramzy, 276 So.2d 451, 454 (Miss. 1973) (quoting 17 Am.Jur.2d Contracts § 26, at 362 (1964)) (emphasis added). See Corbin on Contracts § 29, at 84-85 (1963) ("contract to make a contract is not a contract at all.").
Before a court can order specific performance, the court must be able to look at the instrument and determine what performance is required. Crocker v. Farmers & Merchants Bank, 293 So.2d 438, 442 (Miss. 1974). Therefore, without knowledge of the parties intent of an essential term, this Court, and any court, is unable to determine what performance should be required. The agreement must be definite and certain in order to be enforceable. 17 Am.Jur.2d Contracts § 75 (1964).
The elementary general rule, as frequently enunciated in reference to the enforcement of specific performance of contracts ... is that the contract must be specific and distinct in its terms, plain and definite in its meaning, and must show with certainty that the minds of the parties had met and mutually agreed as to all details upon the offer made upon the one hand and accepted upon the other. If any of these requirements be lacking, specific performance will not be decreed by a court of equity.
Welsh v. Williams, 85 Miss. 301, 303-04, 37 So. 561, 561 (1904).
In McGee v. Clark, an option contract was before the Court on appeal of a chancellor's denial of specific performance. McGee v. Clark, 343 So.2d 486 (Miss. 1977). This Court commented on the requirements of definiteness needed to support a decree for specific performance.
A contract is sufficiently definite if it contains matter which will enable the court under proper rules of construction to ascertain its terms, including consideration of the general circumstances of the parties and if necessary relevant extrinsic evidence. Having found a contract to have been made, an agreement should not be frustrated where it is possible to reach a fair result.
McGee v. Clark, 343 So.2d 486, 489 (Miss. 1977) (quoting Jones v. McGahey, 187 So.2d 579, 584 (Miss. 1966)).
Both Busching v. Griffin cases involved an option contract which recited a purchase price of fifty thousand dollars [$50,000.00] for five acres of land. In Busching v. Griffin I, we noted that a preliminary contract drafted in anticipation of a final agreement can leave no room for implication on what the parties agreed upon. Busching v. Griffin I, 465 So.2d 1037, 1040 (Miss. 1985). If any essential term is left unresolved, there is simply no contract and no obligation on the parties. Busching v. Griffin I, 465 So.2d 1037, 1040 (Miss. 1985) (citing Etheridge v. Ramzy, 276 So.2d 451 (Miss. 1973)). See Knight v. Sharif, 875 F.2d 516, 525 (5th Cir.1989) (when preliminary agreement leaves open material term, there can be no implication of what parties will agree upon); see also South Mississippi Elec. Pwr. Ass'n v. Delhi Gas Pipeline Corp., 436 F. Supp. 244, 257 (S.D.Miss. 1977) (same).
While we are concerned with a first refusal contract in the case at bar rather than an option contract, the distinction proves to be of little consequence. For we find a glaring omission, purchase price, in the agreement between the Dukes and *1275 Mrs. Whatley. Purchase price is an absolute requisite for the remedy of specific performance.
We find nothing in McGee that would lead us to think that the Court would have decided the question otherwise had the option provision on the matter of purchase price been worded as is the case of the one here. The key term whose specificity must appear is the purchase price  here $50,000.00.

Busching v. Griffin II, 542 So.2d 860, 864 (Miss. 1989). (emphasis added). See Sturm v. Dent, 141 Miss. 648, 107 So. 277 (1926) (under Hemingway Code provision § 3119, failure of written memorandum to state purchase price held insufficient to compel specific performance); see also Wolf v. Lodge, 159 Iowa 162, 140 N.W. 429 (1913) (right of first refusal held not specifically enforceable due to absence of price); Andreula v. Slovak Gymnastic Union Sokol Assembly No. 223, 140 N.J. Eq. 171, 53 A.2d 191 (1947) (option to purchase realty not specifically enforceable where contract failed to specify price); Rolfs v. Mason, 202 Va. 690, 119 S.E.2d 238 (1961) (specific performance of option contract denied for want of certainty over price).

CONCLUSION
Our case law demands greater specificity and definiteness than what is found in the agreement which we have before us. Specifically, the absence of a purchase price is fatal.
Accordingly, the decree entered by the learned chancellor in this case on December 1, 1989, be and the same is affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., PRATHER, ROBERTSON, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.