BRIDGES, J.,
dissenting:
¶ 15. I dissent because the portion of the Daltons’s agreement on property division that contains the options to purchase property does not properly form an option contract. A valid contract contains these elements: two or more parties; consideration; an agreement that is sufficiently definite; parties with the legal capacity to contract; mutual assent; and no legal prohibition barring the contract’s formation. Hunt v. Coker, 741 So.2d 1011, 1015 (¶ 9) (Miss.Ct.App.1999) (emphasis added). Of particular concern is the following portion of the agreement, applying to Tracts I, III, and IV:
That Wife shall have sixty days from the date of said appraisal to purchase Husband’s interest in said property and if within said sixty days Wife does not purchase Husband’s interest in said property, then Husband shall have sixty days from said date thereof within which to purchase Wife’s interest in said property.
¶ 16. It is unclear when the Husband’s sixty day option shall begin to run; obviously, it cannot run concurrently with the Wife’s option, although by the words of the agreement that is possible; but it may very possibly run either from the date when the Wife refuses to exercise her option, or it may run from the end of the sixty day period in which the Wife may exercise her option right. These terms are repeated almost verbatim for the property that Mr. Dalton had option rights to purchase, described as Tract II. The terms on their face are “inadequate to expressly delineate the rights of the pu[r]chaser or the obligations of the buyer.” Etheridge v. Ramzy, 276 So.2d 451, 454-455 (Miss.1973).
¶ 17. As terms of an option, they lack crucial information: they do not describe the method of exercising the party’s rights *591 under the option, nor do they describe when the exercise of the option is to take place. Generally, when the time for performance of an option is specified it is binding, although courts have permitted options to run beyond their express time for reasonableness. See R.A. Shapiro, Annotation, Validity of Option to Purchase Realty as Affected by Indefiniteness of Term Provided For Exercise, 31 A.L.R.3d 522 (1970); 17 A Am.Jur.2d Contracts § 49 (1991). Apparently, the parties wished the options to operate automatically; that is, that upon the sixty day period running for Mrs. Dalton, the sixty day period would begin to run for Mr. Dalton. But under the terms of the contract, this is by no means the only possible interpretation.
¶ 18. Combined with the very indigestible wordiness of the options, there is the curious behavior of the Daltons at the loan closing. They did not meet face to face; Mr. Dalton arrived at the closing on time, and Mrs. Dalton did not arrive until after he had left. Mr. Dalton did not know the value of the appraisal; Mrs. Dalton knew the value of the appraisal, and then had the loan officer deduct certain costs from the appraised value that was due Mr. Dalton. Assuming that the terms of the contract were valid and binding, when Mrs. Dalton changed the amount of money she was to pay Mr. Dalton from the agreed upon value in the contract (that is, the appraised value) she rejected the offered contract, as a counter-offer is deemed a rejection of the offer. Duke v. Whatley, 580 So.2d 1267, 1271-72 (Miss.1991). Most likely, this constitutes an event of breach, terminating the option.
¶ 19. But even were this contract valid on its face, there remains the fact that the chancellor has crafted a new contract out of whole cloth. This was a manifest error, even if the contract was partly invalid, or could not be performed on its terms. See East v. East, 493 So.2d 927, 931-32 (Miss.1986) (forbidding modification of agreements incorporated in a divorce decree); Ivison v. Ivison, 762 So.2d 329, 335 (¶¶ 16-17) (Miss.2000) (requiring the court to enforce the terms of an agreement so incorporated unless the terms are ambiguous). There is no allowance made for courts to forge new contracts when the existing contract is partly invalid.
¶ 20. Both parties failed to perform the contract; Mr. Dalton was to sign the quitclaim deeds when he received the correct tender, by the terms of the contract. Mrs. Dalton tried to subvert the terms of the agreement by deducting additional costs from the agreed purchase price within the agreement. Both of these failures of performance occurred at the apparent eleventh hour of Mrs. Dalton’s option rights.
¶ 21. A contract may by its nature and terms be severable, but by the intentions of the parties rendered entire; or a contract entire may be rendered divisible by the acts or agreement of the parties. Mariana v. Hennington, 229 Miss. 212, 230-31, 90 So.2d 356, 364 (1956). As the parties are disputing only the portion of the agreement that deals with the real property, we may sever that portion of the agreement from that portion dealing with the personalty of the parties. Consequently, although the portion of the agreement that establishes option rights for the parties is invalid, it would not be necessary to invalidate the whole contract. Indeed, it would be appropriate to further sever the portion of the agreement that establishes the option contracts from that which allows the court to order a sale of the real property and a division of the proceeds should the parties fail to properly exercise their option rights.
¶22. The contract states quite clearly that failure by either party to exercise their option rights will result in a sale of *592 all disputed properties, with the proceeds to be divided equally between the parties. The terms of the agreement that allow the formation of an option contract are insufficiently specific for the option contracts to form. The appropriate action for this Court would be to reverse and render, ordering a sale of the disputed real property and the division of the proceeds, according to the valid terms of the agreement.
THOMAS, J., JOINS THIS SEPARATE OPINION.