GIGLIO *v.* SAIA.*

(Division A.   Jan. 4, 1926.)

[106 So. 513.   No. 25341.]

SPECIFIC PERFORMANCE. *Specific performance of renewal agreement in lease of property on terms to be agreed upon between parties cannot be enforced.*

The specific performance of a renewal agreement in a lease of property, "upon such terms and for the payment of such rent as may be agreed upon between the parties," cannot be enforced in a court of equity, for the reason that it does not specify the terms on which the lessee has the right to renew the lease.

*Headnote 1.   Landlord and Tenant, 35 C. J., Section 122; Specific Performance, 36 Cyc., pp. 587, 588; On validity and effect of stipulation in contract to renew on terms to be agreed upon, see note in 32 L. R. A. (N. S.) 201; On validity and enforceability of provision for renewal of lease at rental not determined, see note in 30 A. L. R. 572; 16 R. C. L. 886; 4 R. C. L. Supp. 1083; 5 R. C. L. Supp. 906.

140 Miss.—49.

APPEAL from chancery court of Bolivar county, second district.

HON. C. L. LOMAX, Chancellor.

Suit by C. J. Giglio against Mary Saia for specific performance of a contract. From a decree dismissing the original bill, and dissolving an injunction issued thereon, complainant appeals. Affirmed in part, and reversed in part.

*E. O. Sykes,* for appellant.

The lease in this case has been construed by this court to be a valid and binding one in the case of *Giglio* v. *Woollard,* 126 Miss. 6. This lease expressly states that, "party of the second part is to have the right and privilege of renting said store for another period of five years at the termination of this contract, upon such terms and for the payment of such rent as may be agreed upon between the parties hereto at the time, necessary repairs to be made by the party of the first part."

The authorities all agree that a grant is to be construed most strongly against the grantor and in favor of the grantee. Applying this rule, this lease must be construed most strongly against the appellee and in favor of the appellant.

The first thing to be considered is whether or not this clause is a valid and binding one under which the appellant is entitled to a renewal or an extension of the lease. There could be no question of its validity, had this clause permitted the renewal or extension upon the same terms and conditions as the old lease. All the authorities agree as to this.

The authorities, however, are divided upon the question as to the right to the specific performance of a contract where the parties have to agree upon the rental. It is submitted that our court is in accord with those authorities which permit the agreement to be enforced on the broad doctrine that, "That is certain, which can be

rendered certain—'*Id certum est quod certum reddi potest.*' '' We submit that, in this case, the terms referred to mean those general terms appertaining to customs generally applicable to that character of business; and the rent to be agreed on means a reasonable rent at the time the contract is renewed; and if the parties fail to agree upon this rent, a court of chancery will make them agree upon a reasonable rental. A recent case from another state similar to this case; which fully discusses these questions, and, which we submit, lays down the correct rule, is that of *Young* v. *Nelson,* 121 Wash. 285, 209 Pac. 515, 30 Am. L. Rep. 568. Other cases sustaining our contention are *Dreyfus* v. *Oil Co.,* 142 La. 564, 77 So. 283; *Lagurmis* v. *Gerard,* 190 N. Y. Supp. 207. It is our contention, however, that this state has aligned its decisions with that of the Washington court. I think this question is settled by *Pugh* v. *Gressett,* 101 So. 691. See also 13 C. J., page 271; *Joy* v. *City of St. Louis,* 138 U. S. 1, 8, 43, 11 Sup. Ct. 243, 34 L. Ed. 843; *Miller* v. *Kendig,* 55 Iowa 174, 7 N. W. 500; *Worthington* v. *Beeman,* 91 Fed. 232, 33 C. C. A. 475.; *Burton* v. *Wells,* 30 Miss. 688.

The next question is, did this appellant in good faith attempt to take advantage of this clause in the contract? Taking the testimony of the appellee alone, it shows absolutely that in December, before the old lease expired in January, the appellant began to try to renew the lease, and, furthermore, that the appellee then and at all times has declined and refused to renew the lease or rent the building for a period longer than one year, directly in the face of, and contrary to her solemn contract. The appellant did everything within his power to comply with the contract and have the appellee execute a new written lease for a period of five years. The appellee without any excuse whatever declined to do so.

The opinion of this court in *Lumber Co.* v. *Norton,* 111 Miss. 720, is very much in point. In that case the court dealt with the question of the difference between ''an option of renewal,'' and ''option of extension.'' This ques-

tion is not of importance in the case at bar for the rea-
son that here the appellant gave notice in every way,
that it was his intention to renew or extend, and was
prevented from exercising his option by the arbitrary
conduct of the appellee. In the *Norton case, supra,* the
court holds that the right of a lessee to renew or extend
a lease is a substantial and valuable right and a part of
the original lease. We submit that we cannot be de-
prived of this valuable right by the arbitrary conduct
of the appellant as is evidenced by this record. In the
Norton case the court cites with approval *Andrews* v.
*Creamery Co.,* 96 A. S. R. 412. We also ask the court
to read again this Andrews case, because in that case the
negotiations for a renewal or extension were verbal and
very similar to that in the instant case.

We submit that a court of equity will take care of the
right of this appellant and require the appellee to specifi-
cally perform this solemn contract.

*Forrest G. Cooper,* for appellee.

The appellant seeks to have this court specifically per-
form a lease contract of five years, beginning January
1, 1924, and ending December 31, 1929. He has no written
contract, but is standing upon an oral agreement and up-
on rights which accrued to him, as he claims, from the old
lease contract which terminated December 31, 1923, giv-
ing a right to a new contract under certain conditions.
He seeks to excuse the absence of a written contract ap
parently because of the claim that he was lulled into a
sense of security by the statement of R. Danna that such
was not necessary. He also contends that a written con-
tract is not necessary because of the wording of the old
lease contract.

*Did the right of renewal in the old contract require a
new lease contract?* The old contract gave the tenant the
privilege of a new contract if at its termination the
tenant and the landlord would make a new contract,

would agree upon terms, new stipulations, amount of rent, how the property was to be used, limitations upon sub- leasing and the hundred other stipulations frequently in lease contracts. In other words, the right to further use of the premises depended upon the landlord and tenant making another contract.

Most of the contracts with privileges of extension or renewal give the right to the tenant to renew for a definite period either for the same rents or upon a definitely agreed rental, or a definite mode of ascertaining the new rent, such as by arbitration. A contract of this kind for five years with additional privilege of five years is really a ten-year contract, which can be ended at five years by the tenant, but which he can hold for ten years if he wants it. The contract under review cannot be considered in that class. It is a five-year contract and with the additional right to a new contract for five years if the parties will make a new contract for five years. At the very most they made a new contract for one year.

There is a clear distinction between a privilege to extend a lease contract and an option to renew such a contract. In the first class of contracts the tenant may merely remain in possession and continue to pay rents and does not need a new contract. In the latter class of contracts the tenant has the privilege of a new contract and either something definite must be done to establish rights to the new period or a new contract must be made. If the contract under review gives any substantial rights at all it merely gives the right to a new contract and requires a new contract to enable the tenant to remain in possession. We believe very strongly that this new contract of five years should have been in writing to be binding, but will not burden the court with argument along this line because we feel it unnecessary. See *Howard* v. *Tomicich,* 81 Miss. 703, 33 So. 493.

In *Crenshaw Gary Lumber Co.* v. *Norton,* 111 Miss. 720, 72 So. 140, L. R. A. 1916E, 1227n, the court was considering a seven-year contract which contained a stip-

ulation that it might be extended for another seven years upon the same terms. Of course, the court held that this was merely a fourteen-year contract which the tenant might abandon at seven years. The most hotly contested and the best reasoned lease contract case I have found is that of *Masonic Lodge* v. *Presbyterian Church,* 103 Miss. 130, 60 So. 66. The only difference between the "privilege of renewal" clause in that case and the one in our case is that in the Church case the length of time must be agreed upon in a new contract "at the will and pleasure of the Lodge," whereas in the Saia case a new contract "upon such terms and for the payment of such rent" as may be agreed upon.

We say this court has not aligned itself with those authorities holding that such a privilege gives the right of specific performance. We have found no case supporting that view. And most of those cited by counsel do not bear him out. He admits his view is contrary to the weight of authority.

Since the act of agreeing upon a rental requires the exercise of volition, unenforceable in law, a covenant in a lease for the renewal for a term of fifty years upon such rents as might be agreed upon between the parties is nugatory and confers no substantial right upon either party. *Sammis* v. *Huntington* (1918), 104 Misc. 7, 171 N. Y. Supp. 965, affirmed in (1919) 186 App. Div. 463, 174 N. Y. Supp. 610.

A covenant in a lease to renew upon such terms as may be agreed upon is too uncertain and indefinite to be enforced. *Keating* v. *Michael,* 1922, 154 Ark. 267, 242 S. W. 563; *Sterenberg* v. *Beach* (1920), 219 Ill. App. 68; *Robinson* v. *Kettletas* (1842), 4 Edw. Ch. (N. Y.) 67; *Moran* v. *Wellington* (1917), 101 Misc. 594, 167 N. Y. Supp. 465; *Swedish-American Nat. Bank* v. *Merz* (1920), 179 N. Y. Supp. 600; *Metcalf Auto Co.* v. *Norton* (1920), 119 Me. 103, 109 Atl. 384; *Lamew* v. *Townsend* (1921), 147 Ark. 282, 227 S. W. 593. In addition to the authorities already cited, see: 16 R. C. L., subject, "Landlord and

Tenant," par. 390, page 886; 36 Cyc, subject, "Specific Performance," page 595; 36 C. J., subject, "Landlord and Tenant," par. 122, page 1008.

In the face of this array of authorities, which could be added to indefinitely, distinguished counsel has very well admitted that his views are against the great weight of authority. And it appears to be against all of the best reasoned cases.

Argued orally by *E. O. Sykes,* for appellant, and *Forrest G. Cooper,* for appellee.

SMITH, C. J., delivered the opinion of the court.

This is an appeal from a decree dismissing an original bill and dissolving an injunction issued thereon.

In January, 1919, the appellee leased to the appellant a "store building" for a period of five years by a written contract, one of the provisions of which is that:

The "party of the second part is to have the right and privilege of renting said store for another period of five years at the termination of this contract, upon such terms and for the payment of such rent as may be agreed upon between the parties hereto at that time, necessary repairs to be made by party of the first part."

Before the expiration of this lease the appellant sought but failed to obtain a renewal thereof from the appellee. He then exhibited a bill of complaint against the appellee in the court below, setting up his claim to the right to renew the lease under the agreement therefor, prayed for the specific performance of this agreement and for an injunction restraining the appellee from interfering with the use of the building by the appellant. The cause was submitted to the court below on bill, answer, and proof, and a final decree was rendered dismissing the bill, dissolving the injunction, and awarding the appellee an attorney's fee as damages for the wrongful suing out of the injunction.

The specific performance of a contract will not be decreed unless it is certain in its terms. *Montgomery* v. *Norris*, 1 How. 499; *Nickerson* v. *Land Co.*, 118 Miss. 722, 80 So. 1. Tested by this rule the specific performance here sought cannot be decreed, for the renewal agreement not only does not set forth the terms on which the appellant may rent the building for another period of five years, but, on the contrary, expressly provides that he may do so "upon such terms and for the payment of such rent as may be agreed upon between the parties hereto." This leaves everything pertaining to the renewal open for determination by the parties thereto except the period of time for which it is to run. That is to say, they must agree on not only the amount of rent to be paid, but upon the conditions, covenants, and limitations on which the lessor may be willing to renew the lease. Renewal agreements much more specific than this one, in that they leave only the renewal rental to be fixed by future agreement between the parties, have generally been held unenforceable and void for uncertainty and indefiniteness. See note to *Young* v. *Nelson*, 121 Wash. 285, 209 P. 515, 30 A. L. R. 568. See, also, 16 R. C. L. 886; 35 C. J. 108, 109; *Howard* v. *Tomicich*, 81 Miss. 703, 33 So. 493.

The appellant relies on the case of *Pugh* v. *Gressett*, 136 Miss. 661, 101 So. 691, 38 A. L. R. 678. That was a suit, not to enforce the specific performance of a contract, but to collect the price agreed to be paid for certain shares of stock. Gressett was the owner of twenty shares of stock in a corporation of the affairs of which he was in control as a director and general manager thereof. He agreed to sell the twenty shares of stock to Pugh and Howard, and to turn the management of the corporation over to them, and Pugh and Howard agreed, in the language of the opinion:

"To purchase from the complainant the said twenty shares of the capital stock of said company and pay him therefor the sum of ten thousand dollars, four thousand dollars of which purchase price was to be paid upon deliv-

ery of the stock, and the remainder of the purchase price
to be settled for in the note or notes of the defendants, to
be executed in favor of the complainant in negotiable
form, and of such dates of maturity as that said notes
would pass in the usual channels of banks and banking
as negotiable paper.''

. After the oral agreement was made Pugh telegraphed
Gressett as follows:

''Howard comes to Meridian today to take charge of
the affairs of the company in line with agreement. Also
we are to buy your stock for ten thousand dollars. Terms
to be agreed on by October fifteenth.''

To which telegram Gressett responded by telegraph
as follows:

''Telegram received. I confirm sale twenty shares
Meridian Chero-Cola Bottling Company stock to you
for ten thousand dollars. Terms and payment to be
arranged negotiable by October fifteenth.''

Pursuant to this oral agreement and these telegrams,
Gressett turned the management of the corporation over
to Howard and Pugh, who took entire charge of the af-
fairs of the corporation but declined to accept and pay
for the twenty shares of stock therein. The main object
which Howard and Pugh had in view in purchasing this
stock was to obtain the management and control of the
corporation, and the management and control thereof
was turned over to them by Gressett because of their
agreement to purchase his stock in the corporation. Gres-
sett then sued Pugh and Howard for the recovery of the
price agreed to be paid for the stock. One of the ques-
tions presented to the court, on the decision of which the
appellant here rests, is whether there was a sufficient
meeting of the minds of the parties to make a complete
contract. The court, in deciding this question, stated that
the telegrams, when viewed in the light of the previous
negotiations of the parties, were sufficient to show a com-
plete contract for the sale and purchase of the stock. The
court did not decree the terms of payment on which the

stock should be paid for in accordance with the parol agreement between the parties, which was four thousand dollars in cash and six thousand dollars in notes, but rendered a money judgment for the entire purchase price of the plant, resting its decision on the fact that Howard and Pugh had accepted the management and control of the corporation and therefore must pay for the stock therein, the agreement to purchase which induced Gressett to turn the corporation over to them; the language of the court in so holding being as follows:

"The defendants having accepted the plant and the management thereof, they must pay the consideration which they agreed to pay."

We do not understand that case to have qualified the rule of specific performance hereinabove announced. The court there said, to which we of course adhere, that that is certain which can be made certain, but that maxim is of no avail here, for we are without any guide whatever as to what the terms of the renewal should be.

The attorney's fee should not have been allowed. The injunction was merely an incident to the main relief which the appellant sought—that was the specific performance of the contract—and was not dissolved until the bill of complaint was dismissed after a trial of the case on its merits, and it does not appear from the record that any services were rendered by the appellee's counsel in obtaining a dissolution of the injunction that were not necessarily rendered in defending the case on its merits. *Mims* v. *Swindle,* 124 Miss. 686, 87 So. 151; *Howell* v. *McLeod,* 127 Miss. 1, 89 So. 774.

The award to the appellee of an attorney's fee will be eliminated from the decree, but in all other respects the decree will be affirmed. The appellant will be taxed with two-thirds of the costs of this appeal, and the appeal with one-third thereof.

*Affirmed in part; reversed in part.*