DICKINSON, Presiding Justice,
for the Court:
¶ 1. A lease agreement included a five-year renewal provision but failed to specify the rent to be paid during the renewal period. So the circuit judge granted a judgment on the pleadings, finding the renewal provision unenforceable. We affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. Craigside Leasing Corporation leased two tracts of farm land — the 836-acre T.J. Carter Place (“Carter”) and the 1,975-acre Craigside Place (“Craig-side”) — to Intrepid, Inc., for a thirteen-year''term beginning April 1, 1997, and ending December 31, 2009. The annual rent of $81,500 for Carter and $120,000 *777 for Craigside was payable in semiannual installments, and the two lease agreements contained identical extension or renewal options:
Lessor hereby gives and grants unto Lessee ... the right and option to lease said lands for two (2) additional five year terms as follows: If not in default under the terms and conditions Of this lease, a five (5) year extension period beginning January 1, 2010, and ending on December 31, 2014, upon the same terms, except that the rental to be paid by Lessee to Lessor shall be re-negotiated and may increase by the amount of increase from April 1,1997, to January 1, 2009, in land rent customary in the area for similar property; and thereafter, if not in default under the terms and conditions of this lease, Lessee shall have the right and option to renew this lease for an additional five (5) year term beginning January 1, 2015, and ending December 31, 2019, upon the same terms and conditions set forth herein, except that the rental to be paid by Lessee to Lessor shall be re-negotiated and may increase by the amount of increase from January 1, 2009, to January 1, 2014, in land rent customary in the area for similar property. ... It is specifically understood and agreed that all options to renew herein granted shall automatically take effect unless Lessee notifies Lessor in writing of his intention not to renew prior to September 1st of the last year of his primary term or of the fifth year of any extended or option term as provided herein.
¶ 3. In October 2008, near the end of the initial lease term, Joseph S. Asa Bennett bought the land from Craigside Leasing subject to the two leases. In early 2009, Bennett and Intrepid began renegotiating the lease for the five-year renewal period as required by the contract. Bennett wanted to increase the annual rent for Carter to $175 per acre, or $146,300, and for Craigside to $145 per acre, or $286,375. Intrepid balked at Bennett’s price and offered to have an arbitrator determine what the rent should be, but Bennett refused.
¶ 4. On March 9 and 16, 2010, Intrepid tendered the same semiannual rent payments it had paid for the last thirteen years for both leases. Bennett rejected Intrepid’s,payments and declared the leases terminated.
¶5. On February 14, 2013, Intrepid sued Bennett for breach of contract, attaching both- lease contracts to its complaint. Bennett filed an answer, and a motion for judgment on the pleadings, arguing that the options were unenforceable as a matter of law because (1) the rent during the renewal terms was unstated and (2) the options provided no reasonable means to determine the rent. Intrepid argued in response that (1) the options had been exercised automatically because it had not notified Bennett that it would not renew, (2) the options contained the minimal rent- for- the new term, and (3) the options provided a reasonable formula to determine ■ the new rent through which a certified real estate appraiser could calculate a reasonable rent based on land in the area.
¶ 6. The circuit court granted Bennett’s motion for judgment on the pleadings, noting in its ruling that:
The [cjourt has reviewed the leases in this ease and finds that the renewal options are nugatory based on the fact that they lack the essential element of price. Furthermore, because the leases leave the renewal rental to be fixed by future agreement between the parties, ■they are unenforceable and void for uncertainty and indefiniteness.
¶ 7. Intrepid then timely appealed, raising a single issue:
*778 Whether the [t]rial [c]ourt committed reversible error, as a matter of law, in ruling that language providing for a possible upward modification of rentals in an ongoing agricultural lease was not specific enough to be enforceable where the base amount for the rental was set forth as well as a method whereby any amount to be paid above the base rental could be ascertained by reference to the increase, if any, “in land rent customary in the area for similar property” during the first term of the lease, with the possible increase in rental above the base not to take into consideration the improvements placed on the property at the expense of the lessee?
ANALYSIS
¶ 8. We review a circuit court’s grant of a judgment on the pleadings de novo,[1] and questions of law, like the enforceability of a contract made an exhibit to a plaintiffs complaint, may properly be decided through a motion for judgment on the pleadings.[2]
¶ 9. The law that controls this case is well-settled: “This Court has long recognized that an agreement must be definite and certain in order to be enforceable.”[3] We have explained this rule as follows:
[Ujnless an agreement to make a future contract is definite and certain upon all the subjects to be embraced, it is nugatory. To be enforceable, a contract to enter into a future contract must specify all its material and essential terms and leave none to be agreed upon as the result of future negotiations. Where a final contract fails to express some matter, as, for instance, a time of payment, the law may imply the intention of the parties; but where a preliminary contract leaves certain terms to be agreed upon for the purpose of a final contract, there can be no implication of what the parties will agree upon. If any essential term is left open to future consideration, there is no binding contract, and an agreement to reach an agreement imposes no obligation on the parties thereto.[4]
¶ 10. We further have explained that “while courts may supply reasonable terms which the parties omitted in the contracting process, such as a time for performance, essential terms such as price cannot be left as open-ended questions in contracts which anticipate some future agreement.” [5]
¶ 11. Like the price amount in a sales contract, the rental amount in a lease contract is an essential and basic requirement. “In black letter law, a lease is a transfer of an interest in and possession of property for a prescribed period of time in exchange for an agreed consideration called ‘rent.’ ”[6] Without a definite agree *779 ment as to the amount of rental, there can be no binding lease.contract.
¶ 12. This lease option contains no definite method to determine the rent upon renewal. The option, by its very terms, required that rent “shall be renegotiated,” and its uncertain formula for determining the amount of increase made this task impossible. The option clause was merely an agreement to reach an agreement in the future, which is no agreement at all.[7] Based on our prior caselaw, the option is unenforceable because it contains neither a definite rental amount for the renewal period, or a workable method for determining the amount of renewal.
¶ 13. In Giglio v. Saia, a 1926 case from this Court, we held that a similar option provision in a lease contract was unenforceable.[8] The lease agreement in that case said that “[the lessee] is to have the right and privilege of renting said store for another period of five years at the termination of this contract, upon such terms and for the payment of such rent as may be agreed upon between the parties hereto at that time, necessary repairs to be made by [lessor].”[9] This-Court said:
[S]pecific performance here sought cannot be decreed, for the renewal agreement not only does not set forth the terms on which the appellant may rent the building for another period of five years, but, on the .contrary, expressly provides that he may do so “upon such terms and for the payment of such rent as may be agreed upon between the parties hereto.” This leaves everything pertaining to the renewal open for determination by the parties thereto except the period of time for which it is to run. That is to say, they must agree on not only the amount of rent to be paid, but upon the conditions, covenants,.and limitations on which the lessor may be willing to renew the. lease. Renewal agreements much, more specific than this one in that they leave only the renewal rental to be. fixed by future agreement between the parties have generally been held unenforceable and void for uncertainty and indefiniteness.[10]
¶ 14. And while the Court recognized the. maxim “that is certain which can be made certain, ... that maxim is of no avail here, for we are without any guide whatever as to what the terms of the renewal should be.”[11]
¶ 15. Like the doomed option in Giglio, the option in this c&se left the new rental amount and increases in the rent for future negotiations. This agreement to agree in the future failed to create a binding obligation on either party.. “If the document or contract that the parties agree to make is to contain any material term that is not already agreed on, no contract has yet been made; and the so-called ‘contract to make a contract’ is not a contract at all.’ ”[12] By providing that the rental amount “may increase by the amount of increase ... in land rent, customary in the area for similar property,” the option allowed the lessor to demand a higher rental amount during negotiations. Bennett did that just that and Intrepid balked.
*780 ¶ 16. If Intrepid wanted to protect its right to renew at what it considered an acceptable increase in rent, it could have contracted in advance to increase the rent by the increase to known commodities or price indices,[13] or the parties could have agreed to allow a qualified third party or arbiter to make the determination.[14]
¶ 17. In this case, the ceiling on the increase is not tethered to a particular index >or formula. The geographic area by which the increase is to be measured is left completely undefined, .and the option includes no provision" for a qdalified third party to determine the amount of rental increase. Intrepid argues that “there was an automatic renewal for an 1 additional temí of five years beginning January 1, 2010, through December 31, 2014, if no written objection to automatic renewal was made by either party,” and that “both leases were automatically renewed for an additional five year term.” This argument ignores the language iñ the option that requires negotiation. By ágreeiñg to renegotiate the renewal rental amount, rather than recalculate the rental based upon some discernable standard,’ the option lacked a definite rental amount and thus was unenforceable.
CONCLUSION
¶ 18. Because the parties left an essential term of the lease renewal — rent—to future negotiations, without a definite method to determine that amount, the option was rendered unenforceable. So Wé affirm the circuit judge’s decision to grant judgment on the pleadings.
¶ 19. AFFIRMED.
RANDOLPH, P.J., LAMAR, CHANDLER, PIERCE AND COLEMAN, JJ., CONCUR. KING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., AND KITCHENS, J.

. Hartford Cas. Ins. Co. v. Halliburton Co., 826 So.2d 1206, 1210 (Miss.2001) (citing City of Tupelo v. Martin, 747 So.2d 822, 829 (Miss. 1999)).

. Leach v. Tingle, 586 So.2d 799, 801 (Miss. 1991) (citing Keys v. Rehab. Ctr., Inc., 574 So.2d 579, 583 (Miss. 1990) ("Questions of the validity, enforceability and construction of contracts — whether the parties have satisfied the law’s formal requisites — are committed to the court as distinguished from the trier of facts.”)).

. Etheridge v. Ramzy, 276 So.2d 451, 455 (Miss. 1973) (citing 17 Am.Jur.2d Contracts § 75 (1964)).

. Etheridge, 276 So.2d at 454 (citing 17 Am. Jur.2d Contracts § 26 (1964)).

. Duke v. Whatley, 580 So.2d 1267, 1273-74 (Miss.1991) (citation omitted) (citing Smith v. Mavar, 198 Miss. 170, 175, 21 So.2d 810, 811 (1945)).

. State Nat’l Bank of El Paso v. United States, 509 F.2d 832, 835 (5th Cir.1975).

. See Etheridge, 276 So.2d at 454 (citing 17 Am.Jur.2d Contracts § 26 (1964)).

. Giglio v. Saia, 140 Miss. 769, 106 So. 513, 513 (1926).

. Id.

. Id. (internal citations omitted).

. Id.

. Etheridge, 276 So.2d at 454 (citing 1A Corbin, Contracts § 29 (1963)).

. See T.B. Guillory, Inc. v. N. Am. Gaming Entm’t Corp., 741 So.2d 44, 47 (La.Ct.App.3d Cir.1999) (citing Bonfanti v. Davis, 487 So.2d 165 (La.Ct.App.3d Cir.1986)) (“[W]e have found that excess rent tied to a cost of living index was determinable, even though two such indexes resulted in slightly different figures.").

. See Crow v. Crow's Sports Ctr., Inc., 119 So.3d 352, 356 (Miss.Ct.App.2012) ("In this case, the option-to-purchase provision states that the Appellees ‘have the option to purchase said property for a fair market value as determined by appraisal by a licensed real-estate appraiser_’ ”).