# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-01276-COA

**STACY SINQUEFIELD**                                                        **APPELLANT**

**v.**

**THE CITY OF RIDGELAND, MISSISSIPPI**                                **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/01/2022 |
| TRIAL JUDGE: | HON. STEVE S. RATCLIFF III |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JAMES MORTIMER CREWS III |
| ATTORNEYS FOR APPELLEE: | JERRY L. MILLS |
| | JOHN PRESTON SCANLON |
| | ZACHARY LEWIS GIDDY |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | REVERSED AND RENDERED - 07/16/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., McDONALD AND LAWRENCE, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1.     The zoning board for the City of Ridgeland determined that a piece of property owned by Stacy Sinquefield violated Section 200.03E of the Official Zoning Ordinance of the City of Ridgeland because the property lacked the requisite acreage to maintain her two horses. The mayor and board of aldermen upheld this decision.[1]  Sinquefield appealed to the Madison County Circuit Court, which affirmed that decision.  She now appeals again.  We hold that the City of Ridgeland's interpretation of the ordinance was not based on substantial evidence and was arbitrary and capricious.  Therefore, we reverse and render the judgment

---

[1] Collectively, we will refer to the zoning board and the mayor and board of aldermen as "the City."  Otherwise, we will refer to each entity by its full name.

of the circuit court.

## FACTUAL BACKGROUND

¶2.     Sinquefield owns a residence and 2.2 acres located at 300 Hillview Drive in Ridgeland, Mississippi.  She has owned the property since December 29, 2005.  By the date of the events at issue, she owned and kept two horses on her property for about four years without incident.  On September 1, 2021, the City of Ridgeland's Code Enforcement Division issued a notice of code violation to Sinquefield.  The notice provided the following:

> Zoning requirements do not permit livestock on property with less than 3 acres.  Horses must be removed from property and kept at another location.

The zoning ordinance at issue is Section 200.03E of the Official Zoning Ordinance of the City of Ridgeland.  This ordinance permits the following:

> Breeding, raising, and feeding of grazing livestock, (i.e. horses, cattle, sheep, goats, mules, etc.) provided that each such animal herein defined as "grazing livestock" shall be kept on a tract or lot of three (3) acres of land or greater.

On September 27, 2021, Sinquefield met with Georgia Myrick, a code enforcement officer, Jordan Lohman, a city planner for the City of Ridgeland, and the attorney for the City of Ridgeland in an effort to explain why she thought she should not have to remove her horses from her property. Apparently, this meeting did not resolve the issues the City was raising after four years of the horses being there.  Sinquefield appealed the administrative decision of the code enforcement division to the City of Ridgeland's Zoning Board.

¶3.     On November 1, 2021, Sinquefield entered into grazing lease agreements with the

2

owners of three separate land tracts adjacent to hers.[2] On November 4, 2021, a hearing was conducted with the zoning board. At the hearing, Sinquefield presented evidence of the three separate grazing lease agreements.[3] Sinquefield argued that those agreements allowed her 7.985 contiguous acres for her two horses, which exceeded the three acres required for zoning purposes. Additionally, Sinquefield argued that the zoning ordinance was susceptible to two different interpretations: either that a tract must be at least three acres for every one "horses, cattle, sheep, goats, mules, etc." or that keeping "horses, cattle, sheep, goats, mules, etc." of any number requires a tract of at least three acres. She maintained that under either of these interpretations, her grazing lease agreements brought her into compliance with the ordinance. The zoning board's meeting minutes indicate the following:

> Jim Crews, attorney for [Sinquefield], was present on behalf of [Sinquefield]. Mr. Crews addressed the [z]oning [b]oard and presented to the board that there are two reasonable readings of the ordinance: first, three acres per horse, or second, three-acres total lot. Mr. Crews stated [Sinquefield] has secured grazing leases from neighbors making the total grazing area 7.95 acres.

> City Attorney Jerry Mills advised that Alan Hart made the determination that leases to acquire additional acreage would not solve the issue and stated the question is whether the lots can be combined to satisfy requirements of the [z]oning [o]rdinance.

> There was discussion among the board members and others present regarding the interpretation of leasing of neighbors' property and subdivision covenants.

---

[2] These tracts included (1) two acres located at 318 Hillview Drive, (2) two acres located at 304 Hillview Drive, and (3) two acres located at 328 Hillview Drive.

[3] This evidence included a Madison county tax parcel map depicting the relative locations of the three properties in proximity to hers, the three grazing lease agreements, and an ownership-and-acreage-information exhibit describing the exact acreage and tax information for each of the four properties.

3

After discussion, Michelle Caballero moved to affirm the administrative determination of the Ridgeland Zoning Official that leased lots cannot be combined to satisfy the requirements of the [z]oning [o]rdinance and that the property located at 300 Hillview Drive, Ridgeland Mississippi is in violation [of] Section 200.03 of the City of Ridgeland Zoning Ordinance. Jim Collette seconded the motion. Michelle Caballero, Theresa Kennedy, Judy Rice and Jim Collette voted to affirm. Drew Malone abstained. The Chairman declared the motion carried.

Accordingly, the zoning board voted to uphold the decision of the code enforcement division.

¶4.    On November 9, 2021, Sinquefield appealed the zoning board's decision to the mayor and board of aldermen. During a hearing on January 4, 2022, Sinquefield introduced evidence of the grazing lease agreements but also presented three other Ridgeland landowners who were in violation of Section 200.03E of the zoning ordinance. The evidence Sinquefield introduced was of other Ridgeland landowners who housed animals on their land in violation of the acreage requirements. This evidence was comprised of (1) a 11.36-acre tract that maintained four horses and fifteen goats, (2) a 15.3-acre tract that maintained nineteen cows, and (3) a 4.6-acre tract that maintained three horses. Sinquefield asserted that the code enforcement division took no action against these homeowners and, therefore, violated her rights under the Equal Protection Clause of the United States Constitution. The zoning board did not present any evidence to rebut this evidence. The meeting minutes indicated the following:

Next came the 300 Hillview Drive - Public Hearing for Zoning Board Appeal. The Mayor opened the public hearing and the City adjudicated that proper and timely notice was advertised by state law. A copy of the notice is attached hereto as Exhibit "A". The Mayor asked the audience if there was anyone present that would like to speak that did not sign the list and there was no response; a copy of the list is attached hereto as Exhibit "B". Alan Hart, Public Works Director/Community Development Director, made a

4

presentation with regard to horses being maintained at 300 Hillview Drive on a plot of land less than the required acreage per the adopted ordinance. Jim Crews, the attorney for Stacy Sinquefield, then made a presentation and offered documents, which are attached hereto as Exhibit "C". The Mayor then closed the public hearing.

Alderman Chuck Gautier moved to uphold the ruling by the Zoning Board. The motion was seconded by Alderman D.J. Smith and a vote was taken thereon as follows:

Vote:  Aye(s): Alderman Chuck Gautier, Alderman Wesley Hamlin, Alderman Ken Heard, Alderman Kevin Holder, Alderman D.J. Smith, Alderman Bill Lee
Nay(s): None
Absent: Alderman Brian Ramsey

The Mayor then declared the Motion carried.

Accordingly, the mayor and board of aldermen voted to uphold the zoning board's decision and ordered Sinquefield to remove her horses from her property.

¶5.    On January 12, 2022, Sinquefield timely appealed to the Madison County Circuit Court. On November 9, 2022, a hearing took place. At that hearing, pertinent to the issues on appeal, Sinquefield argued the City's decision was arbitrary and capricious because it "didn't offer any kind of support or reasoning for its determination," and "there is nothing in the ordinance that makes any distinction between whether you own the property where you're keeping your horses or whether you lease it or whether there's a combination of both."[4] Furthermore, Sinquefield argued that there was "no evidence in the record" that land

---

[4] Sinquefield also argued that she was deprived of substantive due process because of "the vagueness and inadequacy of the notice that the ordinance purports to give" and that the ordinance was subject to two interpretations, one meaning "as long as you have three acres you can keep your livestock on there" and the second interpretation requiring three acres for "every animal." Further, Sinquefield argued that her equal protection rights were violated because there were "three other tracts out of compliance with the zoning ordinance"

cannot be aggregated to satisfy the acreage requirement. Sinquefield noted the following:

> The city is going to claim that these three owners are grandfathered in. That has never been presented in either hearing. That was never - - that's not part of the record. There's no evidence of that in the record, and we do not think the [c]ourt is entitled to consider this claim.

As Sinquefield suggested, the City argued that those three other properties were "grandfathered in" before the ordinance was adopted.[5]

¶6. As to whether the grazing leases counted toward the requisite acreage, the City argued the following:

> We're not talking about agricultural pastures where all eight of these total acres would be enclosed by a central fence. We're talking about people's yards. This is residential estates where they're going to have - - and they're cordoned off with fences where they're all separated. And the question was presented to [sic] Sinquefield in front of the board of aldermen, "Are you going to be able to have all of these horses inside this same enclosure at once?" And if I recall correctly, and [Sinquefield's attorney] can correct my memory if I'm mistaken on rebuttal, but I believe the answer was, "Well, no, we're going to have to have them here for a little while and then we'll move them to here and then we'll move them to here."[6] They don't have one - - now, I think you asked if it was contiguous. It is contiguous, but they don't have one enclosed pasture which is contemplated for the grazing of cattle. We're talking about people's yards inside the Bridgewater subdivision where people are complaining about livestock grazing because it's not in an agricultural zone.

---

whose owners had not received any notice of noncompliance.

[5] The City of Ridgeland is procedurally barred from raising this argument because it was raised for the first time on appeal before the circuit court. *Bell v. State*, 105 So. 3d 401, 403-04 (¶10) (Miss. Ct. App. 2012) ("It is well settled that issues not raised before the trial court for resolution are procedurally barred from being raised for the first time before the appellate court.").

[6] The meeting minutes from the zoning board hearing and board of aldermen hearing are devoid of any evidence that this information was considered in the interpretation of the ordinance.

6

Later, the following exchange took place:

> THE COURT:   Okay. Well, one thing I think we can all agree on is the ordinance is poorly written. I mean, I think both sides - - could you agree with me on that? It's vague.
>
> THE CITY:   It's at least ambiguous.

¶7.     On December 1, 2022, the circuit court entered its order affirming the City's decision and found that it was based on substantial evidence, was not arbitrary or capricious, and was not beyond the City's power to make.[7] The circuit court ordered the following:

> The [b]oard determined that the combining of neighboring yards is not sufficient to meet the minimum requirement when the properties are divided by either traditional or electric fencing as they are here. It is not the [c]ourt's responsibility to act as the trier of fact. After a review, it is the [c]ourt's view that the issue is fairly debatable and supported by substantial evidence such as to make it not arbitrary and capricious.[8]

¶8.     Sinquefield now appeals and maintains that this Court should reverse the circuit court's decision because the City's determination that Sinquefield lacked sufficient acreage to maintain her horses was not supported by substantial evidence and was arbitrary and

---

[7] The circuit court had appellate jurisdiction to review the City's decision. Miss. Code Ann. § 11-51-75 (Rev. 2019) ("Any person aggrieved by a judgment or decision of the board of supervisors of a county, or the governing authority of a municipality, may appeal the judgment or decision to the circuit court . . . ."). This Court's "review [of such decisions] is limited." *J&A Excavation Inc. v. City of Ellisville*, 371 So. 3d 199, 205 (¶19) (Miss. Ct. App. 2023) (citing *Rod Cooke Constr. Co. v. Lamar Cnty. Sch. Bd.*, 135 So. 3d 902, 906 (¶5) (Miss. Ct. App. 2013)).

[8] As stated before, the City's argument that "the combining of neighboring yards is not sufficient to meet the minimum requirement when the properties are divided by either traditional or electric fencing as they are here" was not made at the hearing before the zoning board or the board of aldermen. The City made the argument for the first time before the circuit court. Therefore, the claim is procedurally barred. *Bell*, 105 So. 3d at 403-04 (¶10). Notwithstanding the procedural bar, we will consider the merits of the issue.

7

capricious. She further claims that the decision violated Sinquefield's rights to due process and equal protection under the Fifth and Fourteenth Amendments to the United States Constitution. Last, she claims the circuit court erred in considering the City's arguments made for the first time on appeal to the circuit court and considering matters outside the record of the hearings before the zoning board and the board of aldermen. We have combined the first and third issues, and we decline to address Sinquefield's constitutional arguments, as the first issue is dispositive.[9]

## STANDARD OF REVIEW

¶9. First, we acknowledge that the circuit court's role was "not as a trier of fact, but rather as an appellate court." *Board of Alderman v. Conerly*, 509 So. 2d 877, 885 (Miss. 1987). Accordingly, we look "beyond the decision of the circuit court" and examine the decision of the mayor and board of aldermen. *Mayor & Bd. of Alderman v. Welch*, 888 So. 2d 416, 418 (¶10) (Miss. 2004). The interpretation of a zoning ordinance is a question of law, and we apply a de novo standard of review. *Wheelan v. City of Gautier*, 332 So. 3d 851, 856-59 (¶¶16-19) (Miss. 2022). A decision of a municipal governing authority will be reversed if the decision is not supported by substantial evidence, if the decision is arbitrary or capricious, or if the governing authority exceeded its powers or violated a party's constitutional or

---

[9] It is well-settled that a constitutional question will be "passed on where the issues involved in a particular case are such that the case may be decided on other grounds." *Warner-Lambert Co. v. Potts*, 909 So. 2d 1092, 1093 (¶3) (Miss. 2005) (citing *Broadhead v. Managahan*, 238 Miss. 239, 117 So. 2d 881, 888 (1960)). "[C]ourts will not decide a constitutional question unless it is necessary to do so in order to decide the case.'" *Scott ex rel. Scott v. Flynt*, 704 So. 2d 998, 1007 (Miss. 1996) (citing *Kron v. Van Cleave*, 339 So. 2d 559, 563 (Miss. 1976)).

statutory rights. *Okhuysen v. City of Starkville*, 333 So. 3d 573, 579 (¶14) (Miss. Ct. App. 2022) (citing *Falco Lime Inc. v. Mayor & Aldermen of City of Vicksburg*, 836 So. 2d 711, 721 (¶42) (Miss. 2002)).

¶10. "If an administrative agency's decision is not based on substantial evidence, it necessarily follows that the decision is arbitrary and capricious." *Pub. Emps.' Ret. Sys. v. Howard*, 905 So. 2d 1279, 1284 (¶13) (Miss. 2005) (quoting *Pub. Emps.' Ret. Sys. v. Marquez*, 774 So. 2d 421, 430 (¶11) (Miss. 2000)). An action "is arbitrary when it is not done according to reason and judgment, but depending on the will alone." *Id.* at 1285 (¶16). An action "is capricious if done without reason, in a whimsical manner, implying either a lack of understanding of or disregard for the surrounding facts and settled controlling principles." *Id*.

## DISCUSSION

¶11. Sinquefield argues that the City's decision was arbitrary and capricious and not based on substantial evidence. Further she argued that Section 200.03E was unconstitutionally vague and that the City's interpretation of it was incorrect.[10] At both the November 4, 2021 zoning board hearing and January 4, 2022 hearing before the mayor and board of aldermen, Sinquefield produced evidence that in an attempt to conform with the requirements of Section 200.03E, she had entered into three grazing lease agreements.[11] However, the City

---

[10] Again, we do not reach Sinquefield's constitutional arguments.

[11] She also argues the ordinance was ambiguous because it was subject to two different interpretations. Sinquefield argues that, under one interpretation, each animal was required to have three acres. Under another interpretation, three acres was adequate for any number of animals defined in the ordinance. She maintains that under either of these

found that these combined leases did not satisfy the requirements of the ordinance.

¶12.    In *Wheelan v. City of Gautier*, the Mississippi Supreme Court overruled prior precedent that "established a standard of review deferential to local agencies on the pure questions of law presented in the interpretation of zoning ordinances." The Supreme Court held that the interpretation of zoning ordinances are "pure questions of law" and, as such, are "reviewed de novo." *Wheelan*, 332 So. 3d at 859 (¶19). The Supreme Court clarified that "the ultimate authority and responsibility to interpret the law, including statutes, rests with this court." *Id.* at 859 (¶18) (quoting *Queen City Nursing Ctr. Inc. v. Miss. State Dep't of Health*, 80 So. 3d 73, 84 (¶28) (Miss. 2011)).

¶13.    Applying the standard set by *Wheelan*, we turn to the case at bar. This Court has stated that "the issue of the meaning of an ordinance is a threshold question in the appeal of any action of a City concerning ordinance enforcement." *Avion Grp. Inc. v. City of Oxford*, No. 2023-CA-00169-COA, 2024 WL 930759, at *7 (¶30) (Miss. Ct. App. Mar. 5, 2024) (citing *Wheelan*, 332 So. 3d at 859 (¶19)), *mot. for reh'g filed* (Apr. 2, 2024). Statutory interpretation is appropriate "if a statute is ambiguous or silent on a specific issue[.]" *BancorpSouth Bank v. Duckett* (*In re Guardianship of Duckett*), 991 So. 2d at 1181. "Whether the statute is ambiguous, or not, the ultimate goal of this Court in interpreting a

---

interpretations, the grazing leases brought her into compliance. The City, in its notice of code violation, indicated that Sinquefield was in violation of the ordinance because she did not have "three acres." The City never argued a six-acre interpretation. The City's argument was that you cannot combine grazing leases with land ownership to comply with the three-acre requirement. We decline to address the ambiguity argument because the plain language of the ordinance precludes the City from its determination that the grazing leases were inadequate to account for the required acreage.

statute is to discern and give effect to the legislative intent." *City of Natchez v. Sullivan*, 612 So. 2d 1087, 1089 (Miss. 1992) (citing *Anderson v. Lambert*, 494 So. 2d 370, 372 (Miss. 1986)). As previously stated, "the interpretation of zoning ordinances are pure questions of law to be reviewed de novo." *Avion Grp.*, 2024 WL 930759, at *7 (¶27) (citing *Wheelan*, 332 So. 3d at 856 (¶¶16-17)). In this review, "we must consider the common and accepted usage of the words in the ordinance and the general structure of the ordinance as a whole." *Keenum v. City of Moss Point*, 368 So. 3d 817, 820 (¶7) (Miss. Ct. App. 2023).

¶14. In conducting our de novo review, it is important to consider the language of Section 200.03E again. It permits:

> [b]reeding, raising, and feeding of grazing livestock, (i.e. horses, cattle, sheep, goats, mules, etc.) provided that each such animal herein defined as "grazing livestock" shall be kept on a tract or lot of three (3) acres of land or greater.

The ordinance is silent as to whether this three-acre tract must be owned in fee simple or may instead be leased. Further the ordinance does not mention any gate or fencing requirement and does not prohibit grazing leases.

¶15. Sinquefield asserts the City was incorrect in its interpretation of the zoning ordinance because the language of the ordinance did not distinguish between property owned and property leased. She maintains that the ordinance defines property "only by the amount of acreage, not its ownership status." The City rejected this argument and held otherwise despite the ordinance not addressing the issue in any way. We conclude that the ordinance merely provides that each animal requires a tract or lot of three acres of land or greater and does not distinguish between owners of land and those who are leasing land. Sinquefield

11

owns 2.2 acres of land. After she was notified that she was not in compliance with section 200.03E, she obtained grazing leases from her three adjacent neighbors, giving her two horses a total of 7.985 contiguous acres.

¶16. The Mississippi Supreme Court has held that "[i]n black letter law, a lease is a transfer of an interest in and possession of property for a prescribed period of time in exchange for an agreed consideration called 'rent.'" *Intrepid Inc. v. Bennett*, 176 So. 3d 775, 778 (¶11) (Miss. 2015). *Black's Law Dictionary* defines a "lease" as "[a] contract by which a rightful possessor of real property conveys the right to use and occupy the property in exchange for consideration, [usually] rent." *Lease*, Black's Law Dictionary 1066 (11th ed. 2019). Grazing leases are legal instruments long recognized by United States courts. *See generally Pub. Lands Council v. Babbitt*, 529 U.S. 728 (2000); *Alamo Land & Cattle Co. v. Arizona*, 424 U.S. 295 (1976); *Brooks v. Dewar*, 313 U.S. 354 (1941). Under our de novo interpretation of section 200.03E, the ordinance does not distinguish the exact type of interest in the land that a horse owner must have vested to be in compliance. The City's interpretation was that the ordinance did not allow for the accumulation of grazing leases to bring a property owner into conformity. The plain language of section 200.03E does not give any support to that interpretation. Looking at the language of the ordinance, it is impossible to ascertain how the city determined that the ownership of land plus grazing leases did not comply with the ordinance.[12] The meeting minutes do not indicate any evidentiary support as to why the

---

[12] The City argued the land that made up the grazing leases had "fences" on them and could not be accessed by the animals. The ordinance does not mention the word fence. Also, there is no evidence in the record indicating if the "fences" had gates that, when opened, would allow the free movement of the animals across the entire 7.985-acre tract.

board arrived at its determination that Sinquefield's land combined with the grazing leases did not bring her into conformity with Section 200.03E. After a de novo review, we find that the leased 7.985 acres of contiguous land far exceeded the requirements of the ordinance. Sinquefield was in compliance because she owned part of the land and had a possessory interest in the remaining portion. In other words, it did not matter whether Sinquefield leased the land or owned the land because the express language of the ordinance did not make a distinction between a person owning land and leasing land next to the part owned.[13]

¶17.    Next, we turn to Sinquefield's argument that the board's decision was not based on substantial evidence. Substantial evidence has been defined as "such relevant evidence as reasonable minds might accept as adequate to support a conclusion or to put it simply, more than a mere scintilla of evidence. " *Bd. of Supervisors of Hancock Cnty. v. Razz Halili Tr.*, 320 So. 3d 490, 495 (¶13) (Miss. 2021) (citing *Hall v. City of Ridgeland*, 37 So. 3d 25, 36 (Miss. 2010)). Mississippi courts have repeatedly reversed a board's decision if it was not based on substantial evidence. *Id.* at 498 (¶22) (reversing where "[t]he [b]oard had no evidence before it, much less more than a mere scintilla"); *Town of Florence v. Sea Lands Ltd.*, 759 So. 2d 1221, 1227 (¶24) (Miss. 2000) (reversing because "there was no substantial evidence to support Florence's decision" that there was a material change in the neighborhood); *Freeman v. Pub. Emps.' Ret. Sys. of Miss.*, 822 So. 2d 274, 279 (¶13) (Miss. 2002) (finding "the factual determination that Freeman is no longer disabled [wa]s not

_____

[13] If the City is correct that the ordinance only applied to those with ownership of land (in the legal sense), then every leaseholder possessing land there could ignore all the ordinances of the City of Ridgeland.

13

supported by substantial evidence"); *Lang v. Pub. Emps.' Ret. Sys. of Miss.*, 284 So. 3d 814, 826 (¶48) (Miss. Ct. App. 2019) (finding PERS decision regarding disability benefits was not supported by substantial evidence and was therefore arbitrary and capricious).

¶18. At the January 4, 2022 hearing, the mayor and board of aldermen were presented with information that the City had other property owners who owned (1) an 11.36-acre tract which maintained 4 horses and 15 goats, (2) a 15.3-acre tract which maintained 19 cows, and (3) a 4.6-acre tract which maintained 3 horses. The City did not attempt to rebut or address this information.[14] Further, the City did not offer any evidence to support its decision that prohibiting the grazing leases was somehow within the plain language of the ordinance. The board of aldermen, after hearing this evidence, still determined to uphold and enforce the decisions of the zoning board enforcing the ordinance as to Sinquefield but not the other property owners who also maintained animals specifically listed in the ordinance. The City's interpretation of Section 200.03E was contrary to the substantial evidence of how the City interpreted and enforced the ordinance to other landowners and was arbitrary and capricious.

## CONCLUSION

¶19. Sinquefield brought herself into compliance with the plain language of the ordinance in question when she obtained a possessory interest in three other adjoining tracts of land by virtue of grazing leases. The decision to hold Sinquefield in violation of the ordinance was

---

[14] The City did not rebut the information about the other landowners being in violation at the hearings. The City sought to argue facts rebutting this information for the first time on appeal in front of the circuit court judge. Matters not presented before the trier of fact and argued for the first time on appeal will not be considered. *Bell*, 105 So. 3d at 403-04 (¶10). The fact that the other owners were "grandfathered in" and, therefore, different from Sinquefield is not in this record on appeal.

14

not based on substantial evidence and was arbitrary and capricious. We therefore reverse the circuit court's order affirming the enforcement of the ordinance by the board of aldermen and render judgment in favor of Sinquefield.

¶20.   **REVERSED AND RENDERED.**

**CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD AND SMITH, JJ., CONCUR.   McCARTY, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.   BARNES, C.J., AND EMFINGER, J., NOT PARTICIPATING.**